**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| LUCASYS INC.,<br><br>*Plaintiff and Counterclaim Defendant,*<br><br>v.<br><br>POWERPLAN, INC.,<br><br>*Defendant and Counterclaim Plaintiff.* | Civil Action No.: 1:20-CV-02987-AT<br><br>Judge Amy Totenberg<br><br>**JURY TRIAL DEMANDED** |

**ANSWER TO A COMPLAINT AND COUNTERCLAIMS**

Defendant and Counterclaim Plaintiff PowerPlan, Inc. ("PowerPlan") hereby answers Plaintiff and Counterclaim Defendant Lucasys Inc.'s ("Lucasys") Complaint (ECF No. 1). Except as expressly admitted below, PowerPlan denies all allegations contained in the Complaint, and denies that Lucasys is entitled to any form of relief. PowerPlan reserves all its rights to alter, amend, or supplement this answer, or to otherwise assert additional defenses and counterclaims, as discovery proceeds. PowerPlan's Answer to the numbered paragraphs of Lucasys' Complaint are set forth below[1]:

1. PowerPlan admits the allegations in paragraph 1 of the Complaint.

[1] Lucasys' Complaint includes more than two pages of improper and argumentative narrative and mischaracterizations in a section entitled "Nature of the Action" appearing before its "Substantive Allegations." To the extent that any response is required here to this improper narrative, PowerPlan denies the allegations and characterizations contained there.

2. PowerPlan denies the allegations in paragraph 2 of the Complaint.

3. PowerPlan admits only that personal jurisdiction over PowerPlan in Georgia is proper and that service *via* Corporation Service Company was proper. PowerPlan denies it committed any tortious acts in Georgia, and denies all remaining allegations in paragraph 3 of the Complaint.

4. PowerPlan admits the allegations in paragraph 4 of the Complaint.

5. PowerPlan admits that Lucasys' principal place of business is located in Cumming, Georgia. PowerPlan also admits that Lucasys represents itself as a tax consulting and software development company. PowerPlan lacks information sufficient to form a belief as to the truth of the remaining allegations in paragraph 5 of the Complaint, accordingly they are denied.

6. PowerPlan admits only that: (*i*) it is a supplier of utility management software for investor-owned rate-regulated utilities and other customers, (*ii*) that its principal place of business is in Atlanta, Georgia, and (*iii*) that it is owned by Roper Technologies, a publicly traded company. PowerPlan denies the remaining allegations in paragraph 6 of the Complaint.

7. PowerPlan admits only that certain investor-owned, rate-regulated utilities use software to address various operational, accounting, regulatory, and tax issues. PowerPlan denies the remaining allegations in paragraph 7 of the Complaint.

8. PowerPlan admits only that the allegations in paragraph 8 of the Complaint describe certain, but not all, products offered by PowerPlan. PowerPlan denies the remaining allegations in paragraph 8 of the Complaint.

9. PowerPlan admits that PowerTax, Provision, and Tax Repairs are part of its Income Tax Suite. PowerPlan admits that its income tax related modules allow its customers to compute tax depreciation and deferred income taxes. PowerPlan denies the remaining allegations in paragraph 9 of the Complaint.

10. PowerPlan admits the allegations in paragraph 10 of the Complaint.

11. PowerPlan admits that some of its software was available in the market in 1994 and thereafter. PowerPlan denies the remaining allegations in paragraph 11 of the Complaint.

12. PowerPlan lacks information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint, accordingly they are denied.

13. PowerPlan denies the allegations in paragraph 13 of the Complaint.

14. PowerPlan denies the allegations in paragraph 14 of the Complaint.

15. PowerPlan admits only that customers wishing to perform functions that are outside of the capability of PowerPlan's software can use alternative service providers. PowerPlan denies the remaining allegations in paragraph 15 of the Complaint.

16. PowerPlan denies the allegations in paragraph 16 of the Complaint.

17. PowerPlan admits that there are numerous providers of services and custom code like those described, and that numerous utilities use competitive bidding to select consultants, and that different customers have different factors they use to evaluate consultants. PowerPlan denies the remaining allegations in paragraph 17 of the Complaint.

18. PowerPlan admits only that it earns revenue from consulting services to some customers that have licensed PowerPlan's products. PowerPlan denies the remaining allegations in paragraph 18 of the Complaint.

19. PowerPlan denies the allegations in paragraph 19 of the Complaint.

20. PowerPlan admits only that paragraph 20 of the Complaint generally describes parts of the rate case process used in some states. PowerPlan denies the remaining allegations in paragraph 20 of the Complaint.

21. PowerPlan admits only that paragraph 21 of the Complaint describes generally part of The Tax Cuts and Jobs Act of 2017. PowerPlan denies the remaining allegations in paragraph 21 of the Complaint.

22. PowerPlan admits only that paragraph 22 of the Complaint describes generally some of the actions in some jurisdictions. PowerPlan denies the remaining allegations in paragraph 22 of the Complaint.

23. PowerPlan denies the allegations in paragraph 23 of the Complaint.

24. PowerPlan admits only that certain of its clients have requested assistance with calculations associated with various tax law changes. PowerPlan denies the remaining allegations in paragraph 24 of the Complaint.

25. PowerPlan admits only that Lucasys and numerous others provide various tax related consulting. PowerPlan denies the remaining allegations in paragraph 25 of the Complaint.

26. PowerPlan admits that it competes with other providers of services concerning deferred taxes. PowerPlan denies all remaining allegations in paragraph 26 of the Complaint.

27. PowerPlan admits that Vadim Lantukh, Daniel Chang, and Stephen Strang are former PowerPlan employees whose employment with PowerPlan ended in 2013 (Lantukh), 2014 (Chang), and 2015 (Strang). PowerPlan also admits that each held employment somewhere other than PowerPlan prior to joining Lucasys. PowerPlan denies the remaining allegations in paragraph 27 of the Complaint.

28. PowerPlan lacks information sufficient to form a belief as to the reasons for Lucasys' founding and on that basis denies same. PowerPlan denies the remaining allegations in paragraph 28 of the Complaint.

29. PowerPlan is without information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the Complaint, accordingly they are denied.

30. PowerPlan admits only that Lucasys has represented that it has developed three technological solutions. PowerPlan is without information sufficient to form a belief as to the truth of any remaining allegations in paragraph 30 of the Complaint, accordingly they are denied.

a. PowerPlan admits only that Lucasys has represented that is has developed software that makes certain deferred tax computations. PowerPlan is without information sufficient to form a belief as to the truth of the remaining allegations in paragraph 30(a) of the Complaint, accordingly they are denied.

b. PowerPlan admits only that Lucasys has represented that is has developed software it refers to as "Copilot" which it claims is a business automation tool. PowerPlan is without information sufficient to form a belief as to the truth of the remaining allegations in paragraph 30(b) of the Complaint, accordingly they are denied.

c. PowerPlan is without information sufficient to form a belief as to the truth of the allegations in paragraph 30(c) of the Complaint, accordingly they are denied.

31. PowerPlan denies the allegations in paragraph 31 of the Complaint.

32. PowerPlan lacks information sufficient to form a belief as to the truth of the allegations in paragraph 32 of the Complaint, accordingly they are denied.

33. PowerPlan denies the allegations in paragraph 33 of the Complaint.

34. PowerPlan denies the allegations in paragraph 34 of the Complaint.

35. PowerPlan admits that it learned that Lucasys responded to a request for proposal issued by AEP. PowerPlan denies the remaining allegations in paragraph 35 of the Complaint.

36. PowerPlan admits that both PowerPlan and Lucasys submitted bids for at least a portion of the work requested by AEP. PowerPlan also admits that it has had communications with AEP regarding PowerPlan's confidential information and the confidentiality obligations under its existing license agreement with PowerPlan. PowerPlan denies the remaining allegations in paragraph 36 of the Complaint.

37. PowerPlan denies the allegations in paragraph 37 of the Complaint.

38. PowerPlan admits only that it sent correspondence to Messrs. Lantukh, Chang and Strang on or about October 30, 2019, which speaks for itself. PowerPlan denies the remaining allegations in paragraph 38 of the Complaint.

39. PowerPlan admits only that it sent correspondence to Messrs. Lantukh, Chang and Strang on or about October 30, 2019, which speaks for itself. PowerPlan denies the remaining allegations in paragraph 39 of the Complaint.

40. PowerPlan denies the allegations in paragraph 40 of the Complaint.

41. PowerPlan admits only that it sent correspondence to Messrs. Lantukh, Chang and Strang on or about October 30, 2019, which speaks for itself. PowerPlan denies the remaining allegations in paragraph 41 of the Complaint.

42. PowerPlan denies the allegations in paragraph 42 of the Complaint.

43. PowerPlan admits only that Lucasys did not have a software product that could be fully substituted for PowerPlan's software. PowerPlan denies the remaining allegations in paragraph 43 of the Complaint.

44. PowerPlan denies the allegations in paragraph 44 of the Complaint.

45. PowerPlan admits only that Lucasys provided certain limited information to certain PowerPlan representatives under strict confidentiality and non-disclosure obligations. Further answering, to date Lucasys has refused to allow undersigned counsel access to the information provided. The remaining allegations in paragraph 45 of the Complaint are denied.

46. PowerPlan denies the allegations in paragraph 46 of the Complaint.

47. PowerPlan admits only that NextEra maintained certain information concerning its non-regulated entities outside the PowerPlan system. PowerPlan lacks information sufficient to form a belief as to the truth of the remaining allegations in paragraph 47 of the Complaint, accordingly they are denied.

48. PowerPlan denies the allegations in paragraph 48 of the Complaint.

49. PowerPlan admits only that it performed certain services for NextEra at various times and at the request of NextEra. PowerPlan is without information sufficient to form a belief as to the remaining allegations in paragraph 49 of the Complaint, accordingly they are denied.

50. PowerPlan admits only that Lucasys proposed to provide certain services to Liberty Utilities and that Lucasys recommended Liberty Utilities implement PowerPlan's income tax suite. PowerPlan denies the remaining allegations in paragraph 50 of the Complaint.

51. PowerPlan denies the allegations in paragraph 51 of the Complaint.

52. PowerPlan denies the allegations in paragraph 52 of the Complaint.

53. PowerPlan admits that in 2019, AEP issued a request for proposals. PowerPlan also admits that both PowerPlan and Lucasys submitted bids for at least a portion of the work requested by AEP. PowerPlan lacks information sufficient to form a belief as to the truth of the remaining allegations in paragraph 53 of the Complaint, accordingly they are denied.

54. PowerPlan admits that it sent certain correspondence to its client AEP, which speaks for itself. PowerPlan lacks information sufficient to form a belief as to the allegations concerning Lucasys' communications with AEP and on that basis denies same. PowerPlan denies the remaining allegations in paragraph 54 of the Complaint.

55. PowerPlan denies the allegations in paragraph 55 of the Complaint.

56. PowerPlan denies the allegations in paragraph 56 of the Complaint.

57. PowerPlan admits only that it has properly asserted its legitimate rights under its software license agreements with its customers. PowerPlan denies the remaining allegations in paragraph 57 of the Complaint.

58. PowerPlan is without knowledge or information sufficient to form a belief as to the truth of what Lucasys allegedly learned, from whom, or when and on that basis denies same. PowerPlan also denies the remaining allegations in paragraph 58 of the Complaint.

59. PowerPlan denies the allegations in paragraph 59 of the Complaint.

60. PowerPlan denies the allegations in paragraph 60 of the Complaint.

61. PowerPlan denies the allegations in paragraph 61 of the Complaint.

62. PowerPlan denies the allegations in paragraph 62 of the Complaint.

63. PowerPlan denies it has engaged in any improper anticompetitive conduct. PowerPlan is without information sufficient to form a belief as to the truth of the remaining allegations in paragraph 63 of the Complaint, accordingly they are denied.

64. PowerPlan admits only that Lucasys' Complaint attempts to allege two or more markets. PowerPlan denies the remaining allegations in paragraph 64 of the Complaint.

65. PowerPlan admits only that investor-owned rate-regulated utilities sometimes use software systems and that such systems can facilitate certain operational, accounting, regulatory, and tax functions. PowerPlan denies the remaining allegations in paragraph 65 of the Complaint.

66. PowerPlan admits only that rate-regulated utilities are regulated and asset intensive. PowerPlan denies the remaining allegations in paragraph 66 of the Complaint.

67. PowerPlan admits that there are certain investor-owned rate-regulated utilities that operate without the use of what the Complaint calls "Utility Management Software." PowerPlan denies the remaining allegations in paragraph 67 of the Complaint.

68. PowerPlan denies the allegations in paragraph 68 of the Complaint.

69. PowerPlan denies the allegations in paragraph 69 of the Complaint.

70. PowerPlan is without information sufficient to form a belief as to costs allegedly associated with switching to a system that Lucasys simultaneously alleges does not exist. Accordingly, PowerPlan denies the allegations in paragraph 70 of the Complaint.

71. PowerPlan denies the allegations in paragraph 71 of the Complaint.

72. PowerPlan denies the allegations in paragraph 72 of the Complaint.

73. PowerPlan denies the allegations in paragraph 73 of the Complaint.

74. PowerPlan denies the allegations in paragraph 74 of the Complaint.

75. PowerPlan denies the allegations in paragraph 75 of the Complaint.

76. PowerPlan denies the allegations in paragraph 76 of the Complaint.

77. PowerPlan denies the allegations in paragraph 77 of the Complaint.

78. PowerPlan denies the allegations in paragraph 78 of the Complaint.

79. PowerPlan admits only that numerous firms provide various consulting services to numerous customers that have deployed PowerPlan's software and that there is competition among such providers. PowerPlan lacks information sufficient to form a belief as to the "capabilities and areas of focus" of these various competitors, and denies any allegations regarding same. The remaining allegations in paragraph 79 of the Complaint also are denied.

80. PowerPlan denies the allegations in paragraph 80 of the Complaint.

81. PowerPlan denies the allegations in paragraph 81 of the Complaint.

82. PowerPlan denies the allegations in paragraph 82 of the Complaint.

83. PowerPlan admits only that utilities are located throughout the United States and could source software and/or services from vendors within the United States. PowerPlan denies the remaining allegations in paragraph 83 of the Complaint.

84. PowerPlan denies the allegations in paragraph 84 of the Complaint.

85. PowerPlan denies the allegations in paragraph 85 of the Complaint

86. PowerPlan denies the allegations in paragraph 86 of the Complaint.

87. PowerPlan denies the allegations in paragraph 87 of the Complaint.

88. PowerPlan denies the allegations in paragraph 88 of the Complaint.

89. PowerPlan denies the allegations in paragraph 89 of the Complaint.

90. PowerPlan denies it engaged in any improper anticompetitive conduct or that any alleged anticompetitive conduct affected interstate commerce. PowerPlan also denies that it has revenues in excess of $150 million annually. PowerPlan lacks information sufficient to form a belief as to the truth of the remaining allegations in paragraph 90 of the Complaint, accordingly they are denied.

91. PowerPlan admits that AEP operates in multiple states. PowerPlan denies the remaining allegations in paragraph 91 of the Complaint.

92. PowerPlan incorporates by reference the preceding responses to Lucasys' allegations.

93. PowerPlan denies the allegations in paragraph 93 of the Complaint.

94. PowerPlan admits only that development of a full suite software product of the scope of PowerPlan's software offering requires significant technological ability and any effort to organically develop such a software offering without access to PowerPlan's trade secrets would require a major capital investment and substantial time. PowerPlan denies the remaining allegations in paragraph 94 of the Complaint.

95. PowerPlan denies the allegations in paragraph 95 of the Complaint.

96. PowerPlan admits only that there is existing choice available from different suppliers. PowerPlan denies the remaining allegations in paragraph 96 of the Complaint.

97. PowerPlan denies the allegations in paragraph 97 of the Complaint

98. PowerPlan denies the allegations in paragraph 98 of the Complaint.

99. PowerPlan denies the allegations in paragraph 99 of the Complaint.

100. PowerPlan denies the allegations in paragraph 100 of the Complaint.

101. PowerPlan denies the allegations in paragraph 101 of the Complaint.

102. PowerPlan denies the allegations in paragraph 102 of the Complaint.

103. PowerPlan denies the allegations in paragraph 103 of the Complaint.

104. PowerPlan incorporates by reference the preceding responses to Lucasys' allegations.

105. PowerPlan denies the allegations in paragraph 105 of the Complaint.

106. PowerPlan admits only that development of a full suite software product of the scope of PowerPlan's software offering requires significant technological ability and any effort to organically develop such a software offering without access to PowerPlan's trade secrets would require a major capital investment and substantial time. PowerPlan denies the remaining allegations in paragraph 106 of the Complaint.

107. PowerPlan denies the allegations in paragraph 107 of the Complaint.

108. PowerPlan denies the allegations in paragraph 108 of the Complaint.

109. PowerPlan denies the allegations in paragraph 109 of the Complaint.

110. PowerPlan denies the allegations in paragraph 110 of the Complaint.

111. PowerPlan denies the allegations in paragraph 111 of the Complaint.

112. PowerPlan incorporates by reference the preceding responses to Lucasys' allegations.

113. PowerPlan admits only that there is existing choice available from different suppliers. PowerPlan denies the remaining allegations in paragraph 113 of the Complaint.

114. PowerPlan denies the allegations in paragraph 114 of the Complaint.

115. PowerPlan denies the allegations in paragraph 115 of the Complaint.

116. PowerPlan denies the allegations in paragraph 116 of the Complaint.

117. PowerPlan denies the allegations in paragraph 117 of the Complaint.

118. PowerPlan denies the allegations in paragraph 118 of the Complaint.

119. PowerPlan incorporates by reference the preceding responses to Lucasys' allegations.

120. PowerPlan denies the allegations in paragraph 120 of the Complaint.

121. PowerPlan denies the allegations in paragraph 121 of the Complaint.

122. PowerPlan denies the allegations in paragraph 122 of the Complaint.

123. PowerPlan denies the allegations in paragraph 123 of the Complaint.

124. PowerPlan incorporates by reference the preceding responses to Lucasys' allegations.

125. PowerPlan denies the allegations in paragraph 125 of the Complaint.

126. PowerPlan denies the allegations in paragraph 126 of the Complaint.

127. PowerPlan denies the allegations in paragraph 127 of the Complaint.

128. PowerPlan denies the allegations in paragraph 128 of the Complaint.

129. PowerPlan denies the allegations in paragraph 129 of the Complaint.

130. PowerPlan denies the allegations in paragraph 130 of the Complaint

131. PowerPlan denies the allegations in paragraph 131 of the Complaint.

132. PowerPlan incorporates by reference the preceding responses to Lucasys' allegations.

133. PowerPlan denies the allegations in paragraph 133 of the Complaint.

134. PowerPlan denies the allegations in paragraph 134 of the Complaint.

135. PowerPlan denies the allegations in paragraph 135 of the Complaint.

136. PowerPlan denies the allegations in paragraph 136 of the Complaint.

137. PowerPlan is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 137 of the Complaint, accordingly they are denied.

138. PowerPlan denies the allegations in paragraph 138 of the Complaint.

139. PowerPlan denies the allegations in paragraph 139 of the Complaint.

140. PowerPlan incorporates by reference the preceding responses to Lucasys' allegations.

141. PowerPlan denies the allegations in paragraph 141 of the Complaint.

142. PowerPlan denies the allegations in paragraph 142 of the Complaint.

143. PowerPlan denies the allegations in paragraph 143 of the Complaint.

144. PowerPlan denies the allegations in paragraph 144 of the Complaint.

145. PowerPlan denies the allegations in paragraph 145 of the Complaint.

146. PowerPlan incorporates by reference the preceding responses to Lucasys' allegations.

147. PowerPlan denies the allegations in paragraph 147 of the Complaint.

148. PowerPlan denies the allegations in paragraph 148 of the Complaint.

149. PowerPlan denies the allegations in paragraph 149 of the Complaint.

150. PowerPlan denies the allegations in paragraph 150 of the Complaint.

151. PowerPlan incorporates by reference the preceding responses to Lucasys' allegations.

152. PowerPlan denies the allegations in paragraph 152 of the Complaint.

153. PowerPlan denies the allegations in paragraph 153 of the Complaint

154. PowerPlan denies the allegations in paragraph 154 of the Complaint.

155. PowerPlan denies the allegations in paragraph 155 of the Complaint.

156. PowerPlan denies the allegations in paragraph 156 of the Complaint.

157. PowerPlan incorporates by reference the preceding responses to Lucasys' allegations.

158. PowerPlan denies the allegations in paragraph 158 of the Complaint.

159. PowerPlan denies the allegations in paragraph 159 of the Complaint.

160. PowerPlan denies the allegations in paragraph 160 of the Complaint.

To the extent PowerPlan has not responded above to any allegations of the Complaint, including the prayer for relief, PowerPlan hereby denies any such allegations.

## POWERPLAN'S ADDITIONAL DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), PowerPlan asserts the following additional defenses. PowerPlan reserves the right to assert additional defenses and/or counterclaims as more information is discovered. PowerPlan does not assume the burden of proof for any defense asserted below, except to the extent the burden of proof already lies with PowerPlan as a matter of law.

### FIRST ADDITIONAL DEFENSE

1. Lucasys lacks standing to bring claims for antitrust violations because, among other reasons, there is no causal connection between the conduct attributed to PowerPlan and Lucasys' alleged injuries, and Lucasys has not suffered an antitrust injury.

**SECOND ADDITIONAL DEFENSE**

2. The Complaint and every claim for relief asserted therein fails to state a claim upon which relief can be granted against PowerPlan.

**THIRD ADDITIONAL DEFENSE**

3. Lucasys' claims are barred, in whole or in part, because there has been no injury to competition as a result of the conduct attributed to PowerPlan.

**FOURTH ADDITIONAL DEFENSE**

4. Lucasys' claims are barred, in whole or in part, because Lucasys has failed to define an appropriate relevant product market and/or geographic market under the antitrust laws.

**FIFTH ADDITIONAL DEFENSE**

5. PowerPlan's business practices were lawful, pro-competitive, increased efficiencies, and benefitted customers.

**SIXTH ADDITIONAL DEFENSE**

6. Lucasys' claims may be barred, in whole or in part, by the applicable statute of limitations and/or statute of repose.

**SEVENTH ADDITIONAL DEFENSE**

7. Lucasys' claims may be barred, in whole or in part, by the doctrines of laches, waiver and/or estoppel.

**EIGHTH ADDITIONAL DEFENSE**

8. Lucasys' claims may be barred, in whole or in part, by the doctrines of *in pari delicto* and/or unclean hands.

**NINTH ADDITIONAL DEFENSE**

9. Lucasys' claims are barred, in whole or in part, because Lucasys failed to reasonably mitigate its alleged damages.

**TENTH ADDITIONAL DEFENSE**

10. Lucasys' claim for equitable relief is barred because Lucasys has adequate remedies at law and/or equitable relief is neither necessary or proper.

**ELEVENTH ADDITIONAL DEFENSE**

11. Lucasys' Seventh and Eighth Causes of Action are barred because PowerPlan was not a stranger to the business relationships between Lucasys and its customers.

**TWELFTH ADDITIONAL DEFENSE**

12. Lucasys' Ninth and Tenth Causes of Action are barred because Lucasys fails to identify any defamatory statement made by PowerPlan with the requisite specificity.

**THIRTEENTH ADDITIONAL DEFENSE**

13. Lucasys' Ninth and Tenth Causes of Action are barred, in whole or in part, because all purported statements made by PowerPlan regarding Lucasys, if any, are privileged under O.C.G.A. § 51-5-7(2) and (3).

**FOURTEENTH ADDITIONAL DEFENSE**

14. Lucasys' Ninth and Tenth Causes of Action are barred, in whole or in part, because all purported fact statements made by PowerPlan regarding Lucasys, if any, were true.

**ADDITIONAL DEFENSES**

By designating the aforementioned defenses, PowerPlan does not in any way waive or limit any defenses which are or may be raised by their denials, allegations, and averments. These defenses also are without prejudice to PowerPlan's ability to raise other and further defenses. PowerPlan expressly reserves all rights to re-evaluate its defenses and/or assert additional defenses upon any amendment of the underlying claims, and/or upon discovery and review of additional documents and information, and upon the development of other pertinent facts.

**POWERPLAN'S COUNTERCLAIMS**

PowerPlan states the following counterclaims against Lucasys for violations of the federal Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 (the "DTSA"),

the Georgia Trade Secrets Act of 1990, O.C.G.A § 10-1-760 et seq. (the "GTSA"), and unfair competition.

## PRELIMINARY STATEMENT

1. PowerPlan incorporates by reference the admissions, denials, and defenses contained in its Answer to Lucasys' Complaint.

2. PowerPlan has, through a substantial investment of time, effort and money over 25 years, developed valuable, unique, sophisticated, and proprietary software and data systems solutions (the "PowerPlan Software"), which permits utility companies, and other businesses operating in rate-regulated and asset-intensive industries, to, among other things, effectively manage and integrate the financial, operational, and regulatory compliance aspects of their assets. PowerPlan's commercial success is due in large part to its proprietary PowerPlan Software, which provides unique capabilities and functionality for customers who license the PowerPlan Software.

3. Vadim Lantukh, Daniel Chang, and Stephen Strang each worked for years as PowerPlan employees (with Lantukh and Chang also subsequently working for years as consultants servicing the PowerPlan Software for PowerPlan customers), where they had access to PowerPlan proprietary information and trade secrets relating to the PowerPlan Software, customers, and pricing, subject to confidentiality and non-disclosure obligations prohibiting them from using or

disclosing, or permitting the unauthorized use or disclosure of, this PowerPlan proprietary information.

4. Lantukh, Chang, and Strang are the founders and main principals of Lucasys, which was formed to develop software, but which also has been providing consulting services to PowerPlan customers relating to their use of the PowerPlan Software, which has provided Lucasys with continued access to the proprietary elements of the PowerPlan Software—including but not limited to information embodied in PowerPlan's proprietary Software architecture, databases and database models, unique functions and features, processes, methods, algorithms, and (potentially) source code—under confidentiality obligations.

5. Lucasys has attempted to market its own software products to the same customer base served by PowerPlan. On information and belief, Lucasys has misappropriated PowerPlan's confidential and proprietary information and trade secrets—including but not limited to information embodied in PowerPlan's proprietary Software architecture, databases and database models, unique functions and features, processes, methods, algorithms, and (potentially) source code—and misused and is continuing to misuse that information to design and develop Lucasys' software. The details of such misappropriation is solely in the possession and control of Lucasys, and will be further elucidated by discovery.

6. Lucasys' misconduct amounts to an intentional misappropriation of PowerPlan's trade secrets in violation of the DTSA and GTSA, and unfair competition. In addition to causing monetary damages to PowerPlan and resulting in unjust enrichment to Lucasys, Lucasys' actions have caused and are causing PowerPlan irreparable harm, for which it seeks injunctive relief.

**PARTIES**

7. Defendant and Counterclaim Plaintiff PowerPlan is a Delaware corporation organized and existing under the laws of the State of Delaware and registered to do business in the State of Georgia as a foreign profit corporation with its principal place of business at 300 Galleria Parkway, Suite 2100, Atlanta, Cobb County, Georgia 30339. PowerPlan is a wholly-owned subsidiary of Roper Technologies, Inc. [NYSE: ROP].

8. Plaintiff and Counterclaim Defendant Lucasys is a Delaware corporation organized and existing under the laws of the State of Delaware and registered to do business in the State of Georgia as a foreign profit corporation, which upon information and belief has its principal place of business at 1595 Peachtree Parkway, Suite 204-190, Cumming, Forsyth County, Georgia 30041.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) because PowerPlan asserts a counterclaim under the federal

Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, for misappropriation of trade secrets. This Court has pendent or supplemental jurisdiction over PowerPlan's remaining counterclaims pursuant to 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over Lucasys because its principal place of business is within the judicial district for the United States District Court for the Northern District of Georgia.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Lucasys resides in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

12. Through a substantial investment of time, effort, and money over the past 25 years, PowerPlan has developed valuable, unique, and sophisticated software and data systems solutions (i.e., the PowerPlan Software).

13. PowerPlan has developed, and continues to develop, upgrade, refine, and add functions and features to, the PowerPlan Software with its own software engineers at great cost to the company. Over the past 25 years, PowerPlan estimates that it has invested more than $100 million in designing, developing, upgrading, and refining its PowerPlan Software.

14. The PowerPlan Software permits utilities, and other businesses operating in rate-regulated and asset-intensive industries, among others, to

effectively manage and integrate financial, operational, and regulatory compliance aspects of their assets.

15. Among other things, the integrated systems and solutions included in the PowerPlan Software enable companies to:

- combine and process granular financial and operational asset details from accounting, tax, finance, operations, and information technology departments into a unique view for each stakeholder that enables them to create optimal department strategies;
- mitigate compliance risk by applying complex tax and industry specific regulatory requirements to a company's consolidated, auditable set of financial books; and
- develop defensible, strategic financial asset scenarios that enable optimal planning.

16. The PowerPlan Software includes architecture, databases, and database structures and models that are unique and proprietary and not provided by other software solutions, and also includes numerous features, functions, and capabilities (including but not limited to calculations, methods, processes, and algorithms), that are unique and proprietary and not provided by other software solutions.

17. The PowerPlan Software, including source code, system and database architecture, databases, database models and structures, various unique and

integrated features and functions thereof, and the methods, processes, and algorithms used to carry them out are confidential and proprietary and embody trade secrets under federal and Georgia law.

18. The PowerPlan Software, and the systems and components included in the Software, derive economic value from not being generally known, and PowerPlan has taken reasonable measures to maintain their secrecy.

19. To maintain the secrecy of its confidential and proprietary information and trade secrets ("PowerPlan Protected Information"), PowerPlan takes a number of reasonable steps, which include but are not limited to the following:

- PowerPlan requires employees to sign employment agreements prohibiting use or disclosure of PowerPlan Protected Information outside of their employment with PowerPlan.
- PowerPlan has adopted employee handbooks with policies similarly prohibiting employees from using or disclosing PowerPlan Protected Information outside of their employment with PowerPlan.
- PowerPlan trains employees on protecting the confidential and proprietary nature of PowerPlan Protected Information.
- PowerPlan does not sell its PowerPlan Software to customers, but instead licenses the Software to customers pursuant to written license agreements in which the customer acknowledges PowerPlan's

proprietary rights in and to the PowerPlan Software programs, manuals and supporting materials; agrees to maintain the confidentiality of and refrain from disclosing PowerPlan Protected Information without the consent of PowerPlan; and agrees to maintain the confidentiality of the PowerPlan Protected Information using no less stringent procedures than the strictest procedures used to protect the customers' own confidential information.

- PowerPlan labels and marks Protected Information as confidential and proprietary.
- PowerPlan requires user logins and passwords for employees, customers, and other persons accessing the PowerPlan Software.

20. The PowerPlan Software has enjoyed success in the marketplace in which PowerPlan operates. The value of the PowerPlan Software and the success of PowerPlan in the marketplace depend in large part on the confidential and proprietary nature of the PowerPlan Software programs, solutions, and related materials, which prevents others from copying protected aspects thereof (including but not limited to proprietary architecture, databases, database models, features and functions, methods, processes, and algorithms) to unfairly compete with PowerPlan.

21. Lantukh, Chang, and Strang worked for years as PowerPlan employees, including in managerial positions.

22. Lantukh was employed by PowerPlan from July 2007 through March 2013, as Manager of Software Implementation and later as Director of Professional Services.

23. In his positions with PowerPlan, Lantukh was responsible for successful customer implementation of PowerPlan Software solutions, and had intimate access to and worked with all aspects of PowerPlan's confidential and proprietary Software systems (including but not limited to the system architecture, databases, database models, features, functions, and source code). Lantukh worked closely with PowerPlan customers implementing and using the PowerPlan Software, including in connection with Software upgrades, restructurings, conversions, and interfacing with customer software solutions and data. To accomplish these tasks, Lantukh worked with PowerPlan Software developers and engineers, and had direct access to, among other things, the PowerPlan Software database models and structure, source code, and confidential customer information.

24. At all times, Lantukh's access to the PowerPlan Protected Information was subject to legal obligations to refrain from using or disclosing that information for any purpose other than PowerPlan business.

25. On July 2, 2007, Lantukh signed an Employment Agreement in which he agreed, among other things, to refrain from using, disclosing, or permitting any unauthorized person from using, disclosing, or gaining access to, any trade secrets

of PowerPlan in perpetuity (for as long as they remained trade secrets), except to the limited extent necessary to satisfy his obligations to PowerPlan.

26. Lantukh was and is also aware that PowerPlan requires its customers to sign license agreements acknowledging PowerPlan's proprietary rights in its Software programs, manuals and supporting materials, and agreeing to maintain the confidentiality of and refrain from disclosing such confidential information and trade secrets.

27. After leaving employment with PowerPlan, from March 2013 through May 2018, Lantukh worked for Regulated Capital Consultants ("RCC") as a consultant providing services primarily to PowerPlan customers in connection with their implementation and use of the PowerPlan Software.

28. As an RCC consultant serving PowerPlan customers, Lantukh continued to have access to the PowerPlan Software, including database model and structure, and to other PowerPlan Protected Information, subject to confidentiality obligations owed to the customers, PowerPlan, and on information and belief, RCC.

29. Chang was employed by PowerPlan from June 2009 to December 2014, first as a consultant assisting customers in implementing and using the PowerPlan Software, and later in managerial positions.

30. In each of his positions with PowerPlan, Chang was responsible for customer implementation of PowerPlan Software solutions, and had intimate access

to all aspects of PowerPlan's confidential and proprietary Software systems (including but not limited to the system architecture, databases, database models, features, functions, processes, methods, algorithms and source code). Chang worked closely with PowerPlan customers implementing and using the PowerPlan Software, including in connection with Software upgrades, restructurings, conversions, and interfacing with customer software solutions and data. To accomplish these tasks, Chang worked with PowerPlan Software developers and engineers, and had direct access to the PowerPlan Software database models and structure, source code, and other PowerPlan Protected Information.

31. At all times, Chang's access to the PowerPlan Protected Information was subject to legal obligations to refrain from using or disclosing that information for any purpose other than PowerPlan business.

32. On June 26, 2009, Chang signed a Handbook Acknowledgment agreeing to comply with PowerPlan's employee handbook policies, which prohibited the disclosure of PowerPlan Protected Information during or after his employment other than for the benefit of PowerPlan.

33. On March 18, 2013, Chang executed an Employment Covenants Agreement agreeing that "both during and after Your employment with the Company," Chang would refrain from using, disclosing, or permitting any unauthorized person from using, disclosing, or gaining access to, any Protected

Information of PowerPlan, except to the limited extent necessary to satisfy Chang's obligations to PowerPlan.

34. Chang was and is aware that PowerPlan requires its customers to sign license agreements acknowledging PowerPlan's proprietary rights in its Software programs, manuals and supporting materials, and agreeing to maintain the confidentiality of and refrain from disclosing its Protected Information.

35. From 2015 until recently, Mr. Chang worked for Deloitte and, among other responsibilities, consulted with PowerPlan customers in connection with implementation and use of their PowerPlan Software. In those capacities Chang continued to have access to PowerPlan's Software, and to other PowerPlan Protected Information, subject to confidentiality obligations owed to the customers, PowerPlan, and upon information and belief, Deloitte.

36. Further, in May 2019, Chang attended a PowerPlan user conference as an employee of Deloitte, where he was exposed to additional PowerPlan Protected Information. PowerPlan disclosed this Protected Information subject to and conditioned upon a non-disclosure agreement signed by Deloitte (the "Deloitte Non-Disclosure"), under which Chang is bound to maintain the confidentiality of PowerPlan's product and other Protected Information, and to refrain from disclosing or making such information available to a third party for any reason.

37. Strang worked for PowerPlan from January 2011 to September 2015, first as a Senior Consultant assisting customers in implementing and using the PowerPlan Software, and later in a managerial position.

38. In each of his positions with PowerPlan, Strang was responsible for customer implementation of PowerPlan Software solutions, and had intimate access to all aspects of PowerPlan's confidential and proprietary Software systems (including but not limited to the system architecture, databases, database models, features, functions, methods, processes, algorithms, and source code). Strang worked closely with PowerPlan customers implementing and using the PowerPlan Software, including in connection with Software upgrades, restructurings, conversions, and interfacing with customer software solutions and data. To accomplish these tasks, Strang worked with PowerPlan Software developers and engineers, and had direct access to the PowerPlan Software database model and structure, source code, and confidential customer information.

39. At all times, Strang's access to the foregoing PowerPlan Protected Information was subject to his legal obligations to refrain from using or disclosing that information for any purpose other than PowerPlan business.

40. On January 13, 2011, Strang signed a Handbook Acknowledgment agreeing to comply with PowerPlan's employee handbook policies, which

prohibited the disclosure of PowerPlan Protected Information during or after his employment other than for the benefit of PowerPlan.

41. On or about March 18, 2013, Strang executed an Employment Covenants Agreement agreeing that "both during and after Your employment with the Company," he would refrain from using, disclosing, or permitting any unauthorized person from using, disclosing, or gaining access to, any Protected Information of PowerPlan, except to the limited extent necessary to satisfy his obligations to PowerPlan.

42. Strang was and is aware that PowerPlan requires its customers to sign license agreements acknowledging PowerPlan's proprietary rights in its Software programs, manuals and supporting materials, and agreeing to maintain the confidentiality of and refrain from disclosing its Protected Information.

43. In or around May 2018, Lantukh founded and became Chief Executive Officer of Lucasys.

44. Lucasys was formed, in part, to develop software and programs (the "Lucasys Software") comparable to the PowerPlan Software, which it intends to market and sell to the same core customer base served by PowerPlan.

45. At the same time Lucasys has been developing its Software with the intent of selling to PowerPlan's customers, Lucasys has been providing consulting services to certain of PowerPlan's customers in connection with the customers'

implementation and use of the PowerPlan Software, during which they have access to nearly all aspects of PowerPlan's Software, under confidentiality obligations that prohibit the misappropriation of PowerPlan Protected Information.

46. Because most of Lantukh's professional career has been spent accessing, modifying, implementing, and working with the PowerPlan Software, either as a PowerPlan employee or as a consultant servicing PowerPlan customers, it would be virtually impossible for him and Lucasys to design and develop the Lucasys Software without relying on confidential and proprietary aspects of the PowerPlan Software.

47. PowerPlan's concerns about Lucasys' use of PowerPlan's Protected Information have been exacerbated by Lucasys' hiring of former PowerPlan employees Chang as Chief Operating Officer (started working with Lucasys in July 2019), and Strang as Chief Technology Officer (started in August 2019), and its announcement that Chang is also a co-founder, with Lantukh, of Lucasys.

48. Lucasys has also contracted with yet another former PowerPlan employee—Vu Nguyen—to become a Lucasys Implementation Partner. Nguyen was a PowerPlan employee who had access to and worked closely with PowerPlan's confidential and proprietary systems, including its database models and source code, and worked closely with PowerPlan customers in implementing the PowerPlan Software.

49. Nguyen worked for PowerPlan from December 2007 to September 2015 in several managerial positions, including Manager of Professional Services, Principal Consultant, and Manager and Senior Manager of Delivery Center.

50. As a PowerPlan employee, Nguyen executed an Employment Agreement agreeing that he would not use, disclose, or permit any unauthorized use of the PowerPlan's Protected Information, and a Handbook Acknowledgment agreeing to comply with PowerPlan's employee handbook policies, which prohibited the disclosure of PowerPlan Protected Information during or after his employment other than for the benefit of PowerPlan.

51. Thus, at all times, Nguyen's access to the PowerPlan Protected Information was subject to his legal obligations to refrain from using or disclosing that information for any purpose other than PowerPlan business.

52. In his position with Integrated Solutions Consulting, Nguyen has worked, or is working, as a consultant for one or more PowerPlan customers helping to implement the PowerPlan Software.

53. On information and belief, Lucasys has been designing and developing the Lucasys Software for more than one year, and continues to do so. Lucasys recently started to market, promote, and attempt to sell this Software to utilities and other regulated and asset intensive businesses, including to PowerPlan's customers.

54. On information and belief, the Lucasys Software has been designed using and/or leveraging the confidential and trade secret information that Lucasys' principals and employees obtained by virtue of their prior PowerPlan employment and PowerPlan customer engagements, which were governed by confidentiality agreements requiring that PowerPlan's confidential and trade secret information be held in strict confidence. On information and belief, Lucasys has used, and is using, that confidential and trade secret information for unauthorized purposes and without the consent or permission of PowerPlan.

55. On information and belief, Lucasys is improperly, unlawfully, and unfairly using PowerPlan's Protected Information—including but not limited to information embodied in PowerPlan's proprietary architecture, software, databases, database schema, and unique functions and features to, on information and belief, design, develop, and implement Lucasys' Software products.

56. On October 30, 2019, PowerPlan sent a letter to Lucasys demanding, among other things, that it:

- cease disclosing or using PowerPlan's Protected Information;
- return all Protected Information in its possession, and delete all such information from its systems; and
- cease designing, developing, selling, or marketing the Lucasys Software unless and until it can be independently verified that

Lucasys designed and developed the Software without use of PowerPlan's Protected Information.

57. Lucasys responded through a letter dated November 8, 2019, in which it did not agree to comply with PowerPlan's demands. The November 8, 2019 letter includes a number of factual and legal assertions with which PowerPlan disagrees.

58. The parties, through their lawyers, subsequently engaged in an expedited exchange of information under certain conditions, seeking to address their areas of disagreement. Lucasys, subject to a strict confidentiality and non-disclosure agreement, provided certain information regarding Lucasys' Software to certain persons at PowerPlan and PowerPlan's former outside counsel. However, to date, and despite its requests, Lucasys has refused to authorize undersigned counsel to review the information provided under this strict confidentiality agreement.

## CAUSES OF ACTION

### COUNT ONE
### Violation of the Defend Trade Secrets Act – 18 U.S.C. § 1836

59. PowerPlan alleges and incorporates the allegations contained in paragraphs 1–58 as if fully set forth here.

60. The PowerPlan Software is licensed to business customers throughout the United States in interstate commerce.

61. The customers to whom PowerPlan licenses PowerPlan Software are located throughout the United States and are engaged in interstate commerce.

62. PowerPlan's Protected Information, including information embodied in the PowerPlan Software (including but not limited to the Software architecture, databases, database models and structure, unique functions and features, methods, processes, algorithms, and source code) contain valuable trade secrets owned by PowerPlan.

63. PowerPlan's Protected Information contains trade secrets under the DTSA because it includes financial, business, technical, and engineering information, including formulas, designs, methods, techniques, processes, procedures, programs, and codes, that are not generally known to the public, for which PowerPlan takes measures that are reasonable under the circumstances to keep secret.

64. PowerPlan's Protected Information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, persons or entities who can obtain economic value from the disclosure or use of the information.

65. On information and belief, Lucasys acquired PowerPlan's trade secrets from one or more of Lantukh, Chang, and Strang by improper means, knowing that these individuals acquired the trade secrets under circumstances giving rise to a duty to maintain the secrecy and limit the use of the trade secrets and/or while consulting

for PowerPlan customers and under a duty to maintain the secrecy and limit the use of the information.

66. On information and belief, Lucasys has improperly obtained and used, and is continuing to improperly use, PowerPlan's trade secrets in connection with designing, developing, implementing, marketing and selling Lucasys Software, without the consent of PowerPlan.

67. Lucasys' acquisition, disclosure, and/or use of the PowerPlan trade secrets, including in connection with designing, developing, implementing, marketing and selling Lucasys software, amounts to a deliberate and improper misappropriation of PowerPlan's trade secrets in violation of the DTSA.

68. As a result of Lucasys' actual and threatened misappropriation of PowerPlan's trade secrets, PowerPlan is suffering irreparable harm. Without permanent injunctive relief awarded pursuant to 18 U.S.C. § 1836(b)(3)(A), PowerPlan will continue to sustain irreparable harm for which there is no adequate remedy at law.

69. PowerPlan is likewise entitled to an award of damages sustained, and amounts by which Lucasys has been unjustly enriched, from Lucasys' misappropriation of PowerPlan's trade secrets, in an amount to be determined at trial, and to other appropriate monetary relief including a doubling of the actual loss

caused by the misappropriation and resulting unjust enrichment, pursuant to 18 U.S.C. § 1836(b)(3)(B) and (C).

70. Lucasys' actions have been intentional and were meant to cause harm to PowerPlan, entitling PowerPlan to recover an award of costs and reasonable attorneys' fees incurred by PowerPlan in this action pursuant to 18 U.S.C. § 1836(b)(3)(D).

**COUNT TWO**
**Violation of the Georgia Trade Secrets Act – O.C.G.A. § 10-1-760**

71. PowerPlan alleges and incorporates the allegations contained in paragraphs 1–70 as if fully set forth here.

72. PowerPlan's Protected Information, including information embodied in the PowerPlan Software (including but not limited to the Software architecture, databases, database models and structure, unique functions and features, and source code) contains valuable trade secrets owned by PowerPlan.

73. PowerPlan's Protected Information contains trade secrets under the GTSA because it includes financial, business, technical, and engineering information, including formulas, designs, methods, techniques, processes, procedures, programs, and codes that are not commonly known to the public, for which PowerPlan takes reasonable measures to keep secret.

74. PowerPlan's Protected Information derives independent economic value from not being generally known to, and not being readily ascertainable through

proper means by, persons or entities who can obtain economic value from the disclosure or use of the information.

75. Upon information and belief, Lucasys acquired PowerPlan's trade secrets from one or more of Lantukh, Chang, and Strang by improper means, knowing that these individuals acquired the trade secrets under circumstances giving rise to a duty to maintain the secrecy and limit the use of the trade secrets and/or while consulting for PowerPlan customers and under a duty to maintain the secrecy and limit the use of the information.

76. Upon information and belief, Lucasys has improperly obtained and used, and is continuing to improperly use, PowerPlan's trade secrets in connection with designing, developing, and implementing Lucasys Software, without the consent of PowerPlan.

77. Upon information and belief, Lucasys has improperly acquired and/or used the trade secrets for the wrongful and deliberate purpose of unfairly competing against PowerPlan.

78. Lucasys' acquisition, disclosure, and/or use of the PowerPlan trade secrets, including in connection with designing, developing, and implementing Lucasys Software, amounts to a deliberate and improper misappropriation of PowerPlan's trade secrets in violation of the GTSA.

79. As a result of Lucasys' actual and threatened misappropriation of PowerPlan's trade secrets, PowerPlan is suffering irreparable harm. Without permanent injunctive relief awarded pursuant to O.C.G.A. § 10-1-762, PowerPlan will continue to sustain irreparable harm for which there is no adequate remedy at law.

80. PowerPlan is likewise entitled to an award of damages under O.C.G.A. § 10-1-763(a), including damages sustained from Lucasys' misappropriation of PowerPlan's trade secrets, or the actual loss to PowerPlan plus the unjust enrichment to Lucasys, for the misappropriation.

81. Lucasys' actions have been intentional and were meant to cause harm to PowerPlan, entitling PowerPlan under O.C.G.A. § 10-1-763(b) to recover exemplary damages in an amount not exceeding twice any award made under O.C.G.A. § 10-1-763(a), and to recover attorneys' fees under O.C.G.A. § 10-1-764.

**COUNT THREE**
**Unfair Competition**

82. PowerPlan alleges and incorporates the allegations contained in paragraphs 1–81 as if fully set forth here.

83. Lucasys' misconduct alleged herein, including but not limited to its misappropriation of PowerPlan trade secrets and breaches of obligations owed under confidentiality and non-disclosure agreements, amounts to unfair competition prohibited by Georgia common law.

84. Lucasys' unfair competition has caused and will continue to cause damages to PowerPlan, for which it is entitled to recover in amounts that will be proved at trial.

85. Lucasys' acts of unfair competition have been willful and intentional or reflect an entire want of care which raises the presumption of conscious disregard of the consequences, entitling PowerPlan to an award of punitive damages.

## COUNT FOUR
## Recovery of Expenses of Litigation – O.C.G.A. § 13-6-11

86. PowerPlan alleges and incorporates the allegations contained in paragraphs 1–85 as if fully set forth here.

87. Lucasys' actions as set forth in this Answer have been in bad faith and have caused PowerPlan unnecessary trouble and expense.

88. As a result of Lucasys' actions, PowerPlan has incurred expenses of litigation, including attorneys' fees, which it is entitled to recover under O.C.G.A. § 13-6-11 in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, PowerPlan respectfully requests that judgment be made and entered in its favor and against Lucasys as follows:

a. Entering judgment in favor of PowerPlan and against Lucasys on all counts alleged in this Counterclaim.

b. Granting to PowerPlan permanent injunctive relief enjoining Lucasys, and all those acting directly or indirectly in concert or participation with it, as follows:

i. Enjoining all disclosure or use of PowerPlan's Protected Information, including but not limited to disclosure or use of the PowerPlan Software and PowerPlan's proprietary customer and pricing information;

ii. Requiring Lucasys and all those acting in concert or participation with Lucasys to return to PowerPlan all PowerPlan Protected Information in their possession, custody or control, and to destroy or delete all information from their computers, systems, and devices;

iii. Enjoining the further design, development, marketing, or sale or efforts to sell the Lucasys Software unless and until it can be independently verified that Lucasys designed, developed, and is able to market and sell the Software without use of PowerPlan's Protected Information;

c. Award compensatory and actual damages against Lucasys, in an amount to be determined at trial, including all damages (including unjust enrichment damages) authorized under 18 U.S.C. § 1836(b)(3)(B) and O.C.G.A. § 10-1-763(a);

d. Award punitive and exemplary damages, including damages up to twice the amount of actual and compensatory damages awarded, authorized under 18 U.S.C. § 1826(b)(3)(C) and O.C.G.A. § 10-1-763(b);

e. Award PowerPlan its reasonable attorneys' fees and costs; and

f. Grant PowerPlan such other and further relief in its favor as this Court may deem just and proper.

PowerPlan demands a trial by jury of every issue triable of right by a jury.

Submitted this 14th day of October, 2021

Respectfully submitted,

*/s/ Damond R. Mace*

Damond R. Mace (admitted *pro hac vice*)
Damond.mace@squirepb.com
Stephen M. Fazio (admitted *pro hac vice*)
Stephen.Fazio@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 479-8500
Facsimile: (216) 479-8780

Petrina A. McDaniel
Georgia Bar No. 141301
Petrina.mcdaniel@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
1230 Peachtree Street NE, Suite 1700
Atlanta, Georgia 30309
Telephone: (678) 272-3200
Facsimile: (678) 272-3211

*Attorneys for Defendant and Counterclaim Plaintiff PowerPlan, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Answer to a Complaint and Counterclaims was served on October 14, 2021 by filing it using the Court's CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Damond R. Mace*
Damond R. Mace

*Attorney for Defendant and*
*Counterclaim Plaintiff PowerPlan, Inc.*