## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| LUCASYS INC., | |
| *Plaintiff*, | Civil Action File |
| v. | No.: 1:20-cv-2987-AT |
| POWERPLAN, INC., | **JURY TRIAL DEMANDED** |
| *Defendant*. | |

## MOTION FOR ORDER REQUIRING PRE-DISCOVERY IDENTIFICATION OF TRADE SECRETS AND BRIEF IN SUPPORT THEREOF

Lucasys, Inc. ("Lucasys") files this motion because PowerPlan, Inc.'s ("PowerPlan") Counterclaims are centered on the most generic of allegations of misappropriation of trade secrets related to PowerPlan's software. PowerPlan's failure to describe the trade secrets at issue with reasonable particularity puts Lucasys in a position where it cannot even defend against those claims.

It is evident that PowerPlan filed its counterclaims – all based on purported trade secrets misappropriation – to distract from the serious antitrust claims against PowerPlan while trying to squash Lucasys at the same time. Requiring PowerPlan to assert its trade secrets with greater specificity is particularly important in a situation like this, in which a monopolist is using the hammer of trade secret

-1-

prosecution based upon vaguely stated categories that does nothing to permit an upstart competitor to either evaluate the claims or respond accordingly.   Indeed, the vagueness is part of the weapon.

Courts in this district and across the country routinely require a party asserting a claim for misappropriation of trade secrets to state with particularity what trade secrets they contend are at issue before seeking discovery related to those claims.  Requiring disclosure by PowerPlan will ensure that: (1) Lucasys can understand precisely what PowerPlan contends Lucasys has done and can prepare to defend itself accordingly; (2) the Court and Lucasys can distinguish relevant discovery from attempts to fish for information that PowerPlan would otherwise not be entitled to; and (3) perhaps most importantly, PowerPlan cannot mold its trade-secret claims to mirror whatever information is produced by Lucasys during discovery.  The need for disclosure upfront is particularly important here, where PowerPlan's bad-faith purpose in filing its counterclaims is obvious following Lucasys's pursuit of serious antitrust claims.  Notably, since this Court entered a Protective Order in this case, PowerPlan cannot claim its failure to disclose the trade secrets with specificity is because of confidentiality concerns.

Rather than waiting months for the parties to tee-up discovery disputes in this litigation and in an effort to move forward expeditiously in discovery, Lucasys

asks the Court to order PowerPlan to identify its alleged trade secrets with specificity, before Lucasys substantively responds to discovery requests related to PowerPlan's trade secrets counterclaims.

## **BACKGROUND**

We understand that the Court is familiar with Lucasys's claims having denied PowerPlan's motion to dismiss those claims in a detailed September 30, 2021 Order.

On October 14, 2021, PowerPlan filed counterclaims (four counts) against Lucasys based on purported misappropriation of trade secrets: (i) violation of the federal Defend Trade Secrets Act, (ii) violation of the Georgia Trade Secrets Act, (iii) unfair competition, and (iv) recovery of expenses of litigation.  (Doc. 36.) Throughout PowerPlan's counterclaim, PowerPlan makes generic allegations that it has trade secrets related to its software.  The main paragraphs of the counterclaim setting forth the purported trade secrets are:

> ¶ 17.  "The PowerPlan Software, including source code, system and database architecture, databases, database models and structures, various unique and integrated features and functions thereof, and the methods, processes, and algorithms used to carry them out are confidential and proprietary and embody trade secrets under federal and Georgia law."

*Under Count One for the Alleged DTSA Violation*

¶ 62.  "PowerPlan's Protected Information, including information embodied in the PowerPlan Software (including but not limited to the Software architecture, databases, database models and structure, unique functions and features, methods, processes, algorithms, and source code) contain valuable trade secrets owned by PowerPlan."

¶ 63.  PowerPlan's Protected Information contains trade secrets under the DTSA because it includes financial, business, technical, and engineering information, including formulas, designs, methods, techniques, processes, procedures, programs, and codes, that are not generally known to the public, for which PowerPlan takes measures that are reasonable under the circumstances to keep secret."

*Under Count Two for the Alleged GTSA Violation*

¶ 72.  "PowerPlan's Protected Information, including information embodied in the PowerPlan Software (including but not limited to the Software architecture, databases, database models and structure, unique functions and features, and source code) contains valuable trade secrets owned by PowerPlan."

¶ 73.  "PowerPlan's Protected Information contains trade secrets under the GTSA because it includes financial, business, technical, and engineering information, including formulas, designs, methods, techniques, processes, procedures, programs, and codes that are not commonly known to the public, for which PowerPlan takes reasonable measures to keep secret."

\* \* \*

Even before litigation commenced, PowerPlan provided no guidance to Lucasys as to what trade secrets are actually at issue after Lucasys challenged PowerPlan's assertions of misappropriation.  Specifically, in a letter between counsel, Lucasys vehemently denied misappropriation of any trade secrets and made it clear that what PowerPlan contended as protected information is "generic, nonproprietary information used by many companies, and it is also well known in the industry and/or has been disclosed to the public."  (Letter from J. Alloy to M. VanderBroek, dated April 29, 2020, attached as Exhibit A.)  PowerPlan's response to this letter merely reiterated generic statements about trade secrets:  that its trade secrets "include not only its source code, but also, among other things, its system and database architecture, database model and schema, various unique and integrated features, functions, and components thereof, and manuals, user guides other software documentation."  (Letter from M. VanderBroek to J. Alloy, dated May 4, 2020, attached as Exhibit B.)

Ultimately, nowhere in this case or in prior communications has PowerPlan separately broken out each individual trade secret that is at issue so that Lucasys and the Court could understand what is at issue, and how it differs from non-secret or publicly available information.  Without this information, PowerPlan has not provided Lucasys an opportunity to defend the claims.

## LEGAL STANDARD

The Court has considerable discretion to adjust the timing and sequence of discovery "for the parties' and witnesses' convenience and in the interests of justice." *Argos USA LLC v. Young*, No. 1:18-CV-02797-ELR, 2021 WL 3081332, at *4 (N.D. Ga. Feb. 2, 2021) (quoting and citing Fed. R. Civ. P. 26(d) and *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 678 (N.D. Ga. 2007)). Further, district courts have "broad discretion to adopt special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." *StoneEagle Servs., Inc. v. Valentine*, No. 3:12-CV-1687-P, 2013 WL 9554563, at *3 (N.D. Tex. June 5, 2013) (quoting *United Servs. Auto. Ass'n v. Mitek Sys., Inc.*, 289 F.R.D. 244, 248 (W.D. Tex. 2013) and Fed. R. Civ. P. 16(c)(2)(L)).

Under Georgia law, PowerPlan has the burden of identifying its alleged trade secrets and proving that the information identified qualifies as a trade secret. "A claim for misappropriation of trade secrets under the Georgia Trade Secrets Act requires a plaintiff to prove that '(1) it had a trade secret and (2) the opposing party misappropriated the trade secret.'" *Capital Asset Research Corp. v. Finnegan*, 160 F.3d 683, 685 (11th Cir. 1998) (quoting *Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1410 (11th Cir. 1998)). "The party asserting the

existence of a trade secret has the burden of proving that the information so qualifies and that the accused party violated the Act." *Id*. at 685–86 (citing Georgia cases).

## **ARGUMENT**

I. **Courts Throughout the Country Require Plaintiffs to Identify Trade Secrets with Particularity Before Discovery Related to Those Claims.**

Consistent with the broad discretion to sequence discovery, courts have previously ordered trade-secret plaintiffs to identify their alleged trade secrets before discovery begins. *See, e.g.*, *DeRubeis*, 244 F.R.D. at 680–81; *Alcoa, Inc. v. Universal Alloy Corp.*, No. 1:15-CV-01466-ELR, 2015 WL 13753187, at *3 (N.D. Ga. Oct. 20, 2015) ("By requiring [the plaintiff] to provide a list of trade secrets, the Court and [the defendant] will be able to more accurately determine relevant responses and appropriate objections."); *StoneEagle Servs., Inc. v. Valentine,* No. 3:12-CV-1687-P, 2013 WL 9554563, at *5 (N.D. Tex. June 5, 2013) (ordering the plaintiff to identify its trade secrets prior to any discovery being served).

Indeed, courts have recognized that "[s]uch disclosure orders are commonplace in trade secret misappropriation cases." *Alifax Holding Spa v. Alcor Sci. Inc.*, 404 F. Supp. 3d 552, 560 n.8 (D.R.I. 2019) (citing *DeRubeis*, 244 F.R.D. at 681); *Uni-Sys., LLC v. U.S. Tennis Ass'n,* No. 17CV147KAMCLP, 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017) ("[F]ederal courts regularly

require trade secrets plaintiffs to identify alleged trade secrets with 'reasonable particularity.'"); *Alcoa*, 2015 WL 13753187, at *2 (recognizing "the growing consensus seems to be in favor of requiring those plaintiffs bringing claims of trade secret misappropriation to identify, with reasonable particularity, the alleged trade secrets at issue" (quoting *StoneEagle Servs., Inc.,* 2013 WL 9554563, at *2).

Early identification of trade secrets is important for many reasons. Courts require trade-secret plaintiffs to identify their trade secrets at the outset of litigation to: (1) place a defendant on notice of the claims being asserted against it so that it may mount appropriate defenses; (2) help the Court and the defendant understand whether and what discovery is relevant, thus protecting the defendant's trade secrets as appropriate; and (3) ensure that a plaintiff does not mold its trade secret claims to mirror whatever information a defendant produces. *See, e.g., DeRubeis*, 244 F.R.D. at 680–81; *Alcoa*, 2015 WL 13753187, at *2.

Courts have also explained what does <u>not</u> satisfy this requirement, including:

(i)      a laundry list of alleged "trade secret" information, *see Ikon Off. Sols., Inc. v. Konica Minolta Bus. Sols., U.S.A., Inc.*, No. 3:08-CV-539-RLV-DCK, 2009 WL 4429156, at *3 (W.D.N.C. Nov. 25, 2009);

(ii)    lengthy, descriptive, but non-specific, paragraphs, *see id.* at n.3;

(iii)   generally listing software, data processing algorithms, and processes that a plaintiff developed, owned, or licensed; *see DeRubeis*, 244 F.R.D. at 679;

(iv)    disclosures that describe how a trade secret fits into a general manufacturing process, *see Alcoa*, 2015 WL 13753187, at *3;

(v)     disclosures that only reveal the end results of, or functions performed by, the claimed trade secrets, *see DeRubeis*, 244 F.R.D. at 679; and

(vi)    various concepts, elements, or components that make up designs, *see Switch Commc'ns Grp. v. Ballard,* No. 2:11-CV-00285-KJD, 2012 WL 2342929, at *5 (D. Nev. June 19, 2012).

Instead, courts require trade secret plaintiffs to separately break out each individual trade secret and identify each claim so that the defendant and the court understand how it differs from non-secret or public domain information.  *See Mitek Sys*., 289 F.R.D. at 249. That means, for example, "what particular combination of components renders each of its designs novel or unique, how the components are combined, or how they operate in unique combination." *See Switch Commc'ns*, 2012 WL 2342929, at *5.

II.   **PowerPlan must identify its purported trade secrets so Lucasys can understand the claims against it and mount its defenses.**

Requiring PowerPlan to identify with specificity the trade secrets it contends are at issue will place Lucasys on notice of what PowerPlan contends Lucasys has misappropriated and allow Lucasys to mount appropriate defenses. "[I]t is difficult, if not impossible, for the defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated." *DeRubeis*, 244 F.R.D. at 681; *see also Alcoa*, 2015 WL 13753187, at *2; *Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05 CIV. 9292 (DLC), 2008 WL 463884, at *11 (S.D.N.Y. Feb. 20, 2008) ("Simply put, that burden includes describing the alleged trade secret with adequate specificity to inform the defendants what it is alleged to have misappropriated"); *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 467 (M.D. Fla. 2008) ("It is axiomatic that a party may not assert a cause of action for misappropriation of trade secrets without identifying for the opposing party the trade secrets at issue."); *see also Argos USA LLC v. Young, No.* 2021 WL 3081332, at *6-8 (not requiring plaintiff to provide a further description of some trade secrets that the court deemed were sufficiently described, including through production of documents, but requiring plaintiff to describe other trade secrets with reasonable particularity because they were not already sufficiently described).

Without notice of what has allegedly been misappropriated, Lucasys is
unable to mount appropriate defenses to PowerPlan's claims. "Often, a trade secret
defendant will defend the claim by showing that it does not use the claimed
secret or that the information is in fact not secret." *DeRubeis*, 244 F.R.D. at
681 (citing *Litton Sys., Inc. v. Sundstrand Corp*., 750 F.2d 952, 954 (Fed. Cir.
1984)). "Until the defendant knows what information is at issue, it cannot
attempt to rebut the plaintiff's charges of misappropriation." *Id*.

Here, Lucasys cannot formulate its defenses because it is unaware of
what specifically PowerPlan contends it has misappropriated. Lucasys—and the
Court—should not have to decipher the general descriptions PowerPlan has
offered and speculate as to what trade secrets PowerPlan contends Lucasys has
misappropriated. This lack of clarity is compounded by the incredibly
broad swath of territory PowerPlan has attempted to stake out.

To place Lucasys on proper notice of PowerPlan' claims, and to allow
Lucasys to formulate its defenses against these claims, the Court should order
PowerPlan to identify its alleged trade secrets before PowerPlan is permitted to
obtain discovery from Lucasys related to the trade secrets claims.

**III.    Requiring PowerPlan to identify its trade secrets will allow the Court and Lucasys to determine the proper scope of discovery.**

Until PowerPlan specifies what trade secrets it contends are at issue, neither Lucasys nor the Court will be able to determine what information sought through PowerPlan' discovery requests is actually relevant. *See DeRubeis*, 244 F.R.D. at 680 ("[U]ntil the trade secret plaintiff has identified the secrets at issue with some specificity, there is no way to know whether the information sought is relevant."); *Alcoa*, 2015 WL 13753187, at *3 ("By requiring [the plaintiff] to provide a list of trade secrets, the Court and [the defendant] will be able to more accurately determine relevant responses and appropriate objections."); *Dura Glob. Techs., Inc. v. Magna Donnelly, Corp.*, No. CIV. A. 07-CV-10945, 2007 WL 4303294, at *2 (E.D. Mich. Dec. 6, 2007) ("Disclosure of plaintiff's trade secrets prior to discovery of defendant may be necessary to enable the defendant and ultimately the Court to ascertain the relevance of plaintiff's discovery." (quoting *Leucadia, Inc. v. Applied Extrusion Techs*., Inc., 755 F. Supp. 635, 637 (D. Del. 1991))).

Further, by requiring PowerPlan to specify its trade secrets now, the Court can also protect Lucasys from needless disclosure of information that may include its own trade secrets. *See DeRubeis*, 244 F.R.D. at 680–81 (noting that an understanding of "the outer permissible bounds of discovery . . . prevents needless

exposure of the defendant's trade secrets"); *Gentex Corp. v. Sutter*, No. CIV A 3:07-CV-1269, 2008 WL 5068825, at *1 (M.D. Pa. Nov. 25, 2008), on reconsideration in part, No. CIV A 3:07-CV-1269, 2009 WL 467313 (M.D. Pa. Feb. 23, 2009) (noting the concern that defendants would "turn over trade secrets that were not misappropriated by former employees of Plaintiff and thereby give their competitor trade secrets it does not now have"), *on reconsideration in part*, No. CIV A 3:07-CV-1269, 2009 WL 467313 (M.D. Pa. Feb. 23, 2009).

Stated differently, "[t]his procedure also protects [the defendant] from having to disclose the nature of its own processes without a better indication of [the defendant's] claims . . . [and] prevents 'the needless disclosure of [the defendant's] confidential information in the event that [the plaintiff] is engaged in a fishing expedition.'"  2015 WL 13753187, at *3 (quoting *DeRubeis*, 244 F.R.D. at 682); *AutoMed Techs.*, *Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. July 12, 2001) (stating that "[the party from which discovery is sought] has as much right to protect its proprietary information as does [the plaintiff]" and refusing to permit the plaintiff "to go on a fishing expedition").

For these reasons, courts have recognized the need for sequencing disclosures and discovery in trade secret cases. In *DeRubeis*, for example, the counterclaim plaintiff alleged that its former employees had misappropriated

its trade secrets but offered only general, nonspecific allegations of the

alleged trade secrets at issue. 244 F.R.D. at 678–79. The Court found that—

as here—the employer had "not specif[ied] any trade secrets at all, but rather

reveal[ed] the end results of, or the functions performed by, the claimed trade

secrets." *Id.* at 679. The Court required the employer first to identify with

"reasonable particularity" those trade secrets it believed to be at issue; only

after the employer had met that obligation could it require its former

employees to provide relevant discovery in response. *Id.* at 681.

Similarly, in *Alcoa*, the Court noted that the plaintiff "has not

identified its particular trade secrets but rather has described the general

process by which it manufactures the parts and how its undefined trade

secrets would be involved in that process." *Alcoa*, 2015 WL 13753187, at \*2.

Accordingly, the Court agreed "the *DeRubeis* approach is appropriate" and

ordered the plaintiff to provide "a list describing the trade secrets at issue

with reasonable particularity" before discovery proceeded. *Id.* at \*3.

That same sequencing is needed here. PowerPlan's general, nonspecific

descriptions of its alleged trade secrets are insufficient to allow Lucasys to

evaluate and respond properly to PowerPlan's discovery requests. In fact,

PowerPlan's trade secret allegations are so vague and broad it would be hard to

-14-

think of material that would not fall in PowerPlan's broad categories. Until

PowerPlan identifies the trade secrets it contends are at issue, Lucasys can only

guess at what discovery may be relevant to those claims and its defenses.

Further, PowerPlan's claims are premised on the misappropriation of its own

trade secrets; Lucasys's trade secrets are not at issue. Lucasys should not be

required to provide discovery that might include its own trade secret

information until at least PowerPlan first identifies its purported trade secrets with

specificity.  This concern is especially compelling here because PowerPlan and

Lucasys are competitors.

## IV.   Pre-discovery identification will prevent PowerPlan from tailoring its claims to fit whatever information Lucasys produces.

Finally, requiring PowerPlan to specifically identify and describe its

purported trade secrets will ensure that PowerPlan cannot simply craft its claims

around whatever information Lucasys produces. "[R]equiring the plaintiff to state

its claimed trade secrets prior to engaging in discovery ensures that [the plaintiff]

will not mold its cause of action around the discovery it receives." *DeRubeis*, 244

F.R.D. at 681; *see also Argos USA LLC v. Young*, No. 1:18-CV-02797-ELR, 2021

WL 3081332, at *7 (N.D. Ga. Feb. 2, 2021) ("Plaintiff apparently seeks to obtain

whatever discovery it can from Defendant Young on these topics and subsequently

designate its trade secrets accordingly.  These types of requests are precisely the

kind of disfavored "fishing expeditions" contemplated by the policy considerations supporting pre-discovery designation.").

That very concern is particularly pressing here. In addition to not stating its trade secrets with particularity, the counterclaims make key allegations only on "information and belief" related to Lucasys purportedly misappropriating or using the trade secrets. (*See, e.g.*, Doc. 36 ¶¶ 54, 55, 65, 75). If PowerPlan cannot say what trade secrets are at issue on anything other than it has "information and belief" that trade secrets are being used, it is unclear why it filed the counterclaims other than to distract from the serious antitrust claims or to create some sort of settlement leverage against Lucasys.

Courts across the country agree with the Court's holding in *DeRubeis* that, in situations like this, it is appropriate to stay discovery until the trade secret plaintiff (here, counterclaim plaintiff) specifically identifies the secrets it purportedly seeks to protect. *See, e.g., BioD, LLC v. Amnio Tech., LLC,* No. 2:13-CV-1670-HRH, 2014 WL 3864658, at *5 (D. Ariz. Aug. 6, 2014) (stating that a plaintiff must identify its trade secrets with reasonable particularity to ensure the plaintiff is not on a fishing expedition); *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, No. 3:12CV220 WWE, 2012 WL 3113162, at *1 (D. Conn. July 31, 2012) (noting one policy in favor of early identification of trade secrets is that it

"prevents [the] plaintiff from tailoring its cause of action based on the discovery received" due to the risk that "a plaintiff, seeking to disadvantage the defendant competitor, might make broad and unspecified charges of misappropriation, obtain full disclosure of the defendant's processes, and then tailor its own claims accordingly"); *Switch Commc'ns*, 2012 WL 2342929, at *4 (citing *DeRubeis* and "requiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives").

Given the general descriptions—and unsupported statements—that PowerPlan has offered about its alleged trade secrets, Lucasys has legitimate concerns that PowerPlan will try to tailor its purported trade secrets to fit whatever information Lucasys may provide in discovery. Indeed, it appears PowerPlan has no evidence to support its claims and simply hopes to find some before having to commit to a position on what trade secrets are actually at issue.  For example, PowerPlan's document requests include the following:

> **REQUEST NO. 24:**
>
> All documents provided to or received from PowerPlan during the information exchange process referenced at Paragraph 45 of the Complaint.

This request aims at obtaining and being able to use information that Lucasys provided about its software, during a confidential exchange of information (which PowerPlan's current counsel has not yet been able to access). If PowerPlan and its current counsel obtain that information before PowerPlan articulates its trade secrets with specificity, PowerPlan is very likely to craft its trade secrets based on the information Lucasys provides versus what legitimate (if any) trade secrets PowerPlan actually has.

To prevent the potential for gamesmanship, the Court should grant Lucasys's motion and require PowerPlan to identify its alleged trade secrets before requiring Lucasys to engage in discovery related to PowerPlan's trade secret claims.

## CONCLUSION

PowerPlan's statement of general categories of its purported trade secrets is not sufficient to put Lucasys on notice of the claims against it. Without PowerPlan specifying what it contends has been misappropriated, Lucasys cannot determine what discovery may be relevant or formulate its defenses. Further, Lucasys is concerned that PowerPlan may obtain discovery of Lucasys's proprietary information and use the discovery process to tailor its claims to fit whatever information Lucasys may provide.

By resolving this foundational issue now, before the parties begin to produce discovery, the Court will serve the interests of judicial efficiency and minimize the burdens on both parties.  Accordingly, Lucasys respectfully requests the Court to grant its motion and order PowerPlan to provide Lucasys a specific description of each of the alleged trade secrets that PowerPlan contends Lucasys has misappropriated and that Lucasys shall have until thirty days after PowerPlan provides that description to respond to discovery related to PowerPlan's counterclaims.

This 22nd day of October, 2020.

/s/ Jason S. Alloy
Richard L. Robbins
Georgia Bar No. 608030
rrobbins@robbinsfirm.com
Jason Alloy
Georgia Bar No. 013188
jalloy@robbinsfirm.com
Joshua Mayes
Georgia Bar No. 143107
jmayes@robbinsfirm.com
Evan Dunn
Georgia Bar No. 535202
edunn@robbinsfirm.com
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, GA 30318
(678) 701-9381
(404) 856-3255 (fax)

Aaron Gott (admitted *pro hac vice*)
aaron.gott@bonalawpc.com
BONA LAW PC
15 South 9th Street, Suite 239
Minneapolis, MN 55402
(612) 284-5001
Jarod Bona (admitted *pro hac vice*)
jarod.bona@bonalawpc.com
Jon Cieslak (admitted *pro hac vice*)
jon.cieslak@bonalawpc.com
BONA LAW PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
(858) 964-4589
(858) 964-2301 (fax)

*Counsel for Plaintiff Lucasys Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I electronically filed the foregoing

**MOTION FOR ORDER REQUIRING PRE-DISCOVERY**

**IDENTIFICATION OF TRADE SECRETS AND BRIEF IN SUPPORT**

**THEREOF** which is typed in Times New Roman 14 point in compliance with the

local rule, with the Clerk of Court using the CM/ECF system which will send

email notification of such filing to all attorneys of record:

Petrina A. McDaniel
Petrina.mcdaniel@squirepb.com
Squire Patton Boggs (US) LLP
1230 Peachtree St., NE, Suite 1700
Atlanta, GA  30309

Damond R. Mace
Damond.mace@squirepb.com
Stephen M. Fazio
Stephen.fazio@squirepb.com
Squire Patton Boggs (US) LLP
4900 Key Tower
127 Public Square
Cleveland, OH  44114

This 22nd day of October, 2021.

*/s/ Jason S. Alloy*
Jason S. Alloy

# EXHIBIT A



# ROBBINS
### LITIGATION AND REGULATORY LAW

**Jason S. Alloy**
DIRECT LINE:  678-701-9374
Email: jalloy@robbinsfirm.com

April 29, 2020

<u>**VIA EMAIL AND U.S. MAIL**</u>

Mark S. VanderBroek, Esq.
Peter Munk, Esq.
Nelson Mullins Riley & Scarborough LLP
Atlantic Station
201 17th Street, NW - Suite 1700
Atlanta, Georgia 30363
mark.vanderbroek@nelsonmullins.com
peter.munk@nelsonmullins.com

      Re:    *PowerPlan, Inc. v. Lucasys, Inc.*

Dear Mark and Peter:

      We have received your letter dated April 17, 2020 terminating the Agreed Process.  Following receipt of the letter, we have learned of very troubling actions by PowerPlan.  Specifically, PowerPlan is now interfering with Lucasys' customer agreements and relationships and is attempting to lock Lucasys out from working with its customers that use PowerPlan's software, including most recently interfering with Lucasys' relationship with Liberty Utilities.

      PowerPlan's actions are anti-competitive and would likely raise the ire of various federal and state anti-trust authorities.  PowerPlan's actions also violate multiple unfair competition statues and constitute tortious interference of Lucasys' customer relationships and contracts.  PowerPlan is causing millions of dollars in damages to Lucasys.

      For the reasons set forth in more detail below, Lucasys demands that PowerPlan immediately cease and desist from its improper conduct, including interfering with Lucasys' relationship with its customers.  In addition, if there is

Mark S. VanderBroek, Esq.
Peter Munk, Esq.
April 29, 2020
Page 2

really confidential PowerPlan information that will be disclosed in its work with Liberty Utilities (or other joint customers), Lucasys would consider a confidentiality agreement that would protect limited, legitimate interests.  But such an agreement should not be overreaching, nor an attempt to designate confidential information that is not confidential and already public.  Nor should it seek to prevent Lucasys from conducting its legitimate business.  **We request that by Monday, May 4, 2020, PowerPlan:  (i) confirm it will cease and desist from the conduct outlined above and (ii) provide any such confidentiality agreement for Lucasys' consideration.**

\* \* \*

As brief background, since at least November of last year, PowerPlan has had a fundamental misunderstanding of Lucasys' software and business.  For the last six months, we have provided information to PowerPlan to be as open and clear as possible as to what Lucasys was doing.  This included the Lucasys team: (i) meeting in person with PowerPlan personnel and experts to demonstrate its software, (ii) answering numerous questions by PowerPlan about Lucasys' business and software, and (iii) providing substantial related documentation, including Lucasys sales and marketing documents, communications, development documents, and application source code.  Lucasys has nothing to hide.

Despite providing all this information to PowerPlan, your April 17 letter still mischaracterizes what Lucasys is doing.  Nevertheless, as Lucasys has made clear and will make clear again, Lucasys is not using or misappropriating any of PowerPlan's trade secrets or confidential information.[1]

Lucasys also has no interest in accessing PowerPlan's software other than to obtain Lucasys' <u>customer's</u> (not PowerPlan's) data and to then provide business process support to customers based on the <u>customer's</u> data.  In fact, Lucasys would prefer not to access PowerPlan's software at all, but PowerPlan has built a wall around its customer's data – likely to monopolize customers' business and try to keep companies like Lucasys from working with PowerPlan's customers.  This

---

[1]  This is putting aside that we dispute what PowerPlan contends is its confidential or trade secret information in the first place.  Other than PowerPlan's source code (which Lucasys has never had or used), the information PowerPlan contends is protected is generic, nonproprietary information used by many companies, and it is also well known in the industry and/or has been disclosed to the public.

Mark S. VanderBroek, Esq.
Peter Munk, Esq.
April 29, 2020
Page 3

is even more concerning because PowerPlan's customers are public utilities, and PowerPlan's actions are preventing utilities from being able to use their own data as they wish.

The most recent specific PowerPlan conduct that troubles us relates to Liberty Utilities, which is a Lucasys client. Liberty Utilities engaged Lucasys to advise on best practices through its design phase of a financial transformation project. In this project, Lucasys has served as an extension of Liberty Utilities' tax department to advocate for and provide advisory services related to Liberty's business processes and requirements. To perform these services, Lucasys does not require access to any PowerPlan confidential or proprietary information.

PowerPlan, however, notified Liberty Utilities that it cannot consult with Lucasys on this process. We also understand that PowerPlan is threatening Liberty Utilities that it may take legal action against Liberty Utilities if Liberty Utilities continues to work with Lucasys or contracts with Lucasys in the future. This is deeply concerning to say the least.

Finally, to preserve and prevent spoliation of information and documents relevant to PowerPlan's improper actions, we demand that PowerPlan, and all others acting in concert with it, put a litigation hold in place and take all necessary steps to preserve and retain, and to avoid deleting, destroying, altering, or overwriting, all documents, records, and electronically stored information ("ESI") in its possession, custody, or control that refer, relate to, or evidence any of the practices and conduct referenced in this letter. This includes but is not limited to maintaining and preserving all documents and ESI in the possession or control of PowerPlan, consisting of or relating or referring in any manner to any of the following:

> (1) PowerPlan's efforts to maintain the confidentiality of any of its alleged proprietary, confidential, or trade secret information,

> (2) PowerPlan's disclosure to the public or any person or entity of any of its alleged proprietary, confidential, or trade secret information,

> (3) All documents that refer or relate to how PowerPlan created/decided on the labels and terminology for the column headers in its software,

Mark S. VanderBroek, Esq.
Peter Munk, Esq.
April 29, 2020
Page 4

(4) PowerPlan's permitting (whether actively or passively) any persons or entities to access its systems or information about its systems without a confidentiality agreement,

(5) PowerPlan's communications with third parties (including but not limited to Lucasys' customers) about Lucasys,

(6) All documents that refer or relate to Lucasys or its business or products, including PowerPlan's internal communications,

(7) PowerPlan's plans or actions related to Lucasys or potential competitors of PowerPlan, including but not limited to plans or actions to prevent them from competing with PowerPlan,

(8) All documents, including communications, that refer or relate to stifling, limiting, or in any way preventing competition with PowerPlan, and

(9) All documents that refer or relate to PowerPlan not creating or providing an application program interface with its software.

* * *

We look forward to hearing from you soon.

Sincerely yours,

*Jason S. Alloy*

Jason S. Alloy

cc:    Richard L. Robbins
        Joseph H. Saul

# EXHIBIT B



**NELSON MULLINS**

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AND COUNSELORS AT LAW

Atlantic Station
201 17th Street, NW | Suite 1700
Atlanta, GA 30363
T 404.322.6000  F 404.322.6050
nelsonmullins.com

Mark S. VanderBroek
T 404.322.6675
mark.vanderbroek@nelsonmullins.com

May 4, 2020

**Via Email and Overnight Courier**

Jason S. Alloy, Esq.
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, NW
Atlanta, Georgia 30318

Re:    PowerPlan, Inc. ("PowerPlan") v. Lucasys, Inc. ("Lucasys") *et al.*

Dear Jason:

This letter responds to your April 29, 2020 letter. As an initial matter, you and Lucasys continue to ignore the undisputed fact that Lucasys and its principals are making unauthorized use of their proprietary knowledge of PowerPlan's database model to design and develop competing Lucasys software modules to directly integrate and work with PowerPlan's software and databases. This alone amounts to both a misappropriation of PowerPlan trade secrets and a breach of Lucasys' and its principals' contractual confidentiality and non-disclosure obligations.

Furthermore, there is nothing anticompetitive or improper with PowerPlan protecting its confidential and proprietary software solutions under the typical confidentiality provisions in its software license agreements with its customers, by exercising its contractual right to withhold consent from a customer providing Lucasys with access to PowerPlan's software and associated confidential information. The law does not require PowerPlan to do business with a competing software provider such as Lucasys, or to provide or consent to its customers providing Lucasys with access to PowerPlan's proprietary software solutions.

**A. Lucasys is Using Its Proprietary Knowledge about PowerPlan's Database Model to Develop Competing Software to Directly Integrate with PowerPlan Databases.**

Your letter continues to assert Lucasys' prior contention that it is not using or misappropriating PowerPlan confidential information or trade secrets to develop its software. But you continue to ignore the fact – addressed in both my March 9 and April 17 letters – that Lucasys and its principals have admitted that they are (or will be) using their proprietary knowledge of PowerPlan's database model and structure to design and develop an automated integration between Lucasys software modules and PowerPlan databases. This alone amounts to a misappropriation of PowerPlan's trade secrets in its proprietary database model, because Lucasys and its principals (1)

Jason Alloy, Esq.
May 4, 2020
Page 2

acquired these trade secrets pursuant to confidential relationships (between Lantukh, Chang, and Strang and PowerPlan and/or between Lucasys and PowerPlan customers) under which they were required to keep the information secret and limit its use, and (2) thereafter used and plan to use the trade secrets without PowerPlan's consent for the unauthorized purpose of developing competing (and complimentary) Lucasys software. This also amounts to a breach of Lucasys' principals' contractual confidentiality obligations owed to PowerPlan, and of Lucasys' contractual confidentiality obligations owed to its customers for which it has provided consulting services relating to PowerPlan software.

In fact, your letter admits that Lucasys is designing its software to access PowerPlan's software to obtain customers' data from PowerPlan's databases to be processed by Lucasys' software. Contrary to the suggestion in your letter, PowerPlan does ***not*** prevent its customers from using their own data. PowerPlan's complaint is not with Lucasys' use of a customer's data, but with Lucasys' use of its proprietary knowledge of PowerPlan's database model to design an integration between its software and PowerPlan's software to get access to and retrieve this data. This gives Lucasys an unfair competitive advantage in developing its competing software to work alongside and in conjunction with PowerPlan's software and databases.[1]

## B.   PowerPlan's Software Solutions, including its Database Model, Are Confidential and Proprietary and Amount to Trade Secrets

Footnote 1 of your letter contends, for the first time and without any support, that PowerPlan's confidential information and trade secrets extend only to its software source code. Nothing could be further from the truth. The confidential and proprietary information and trade secrets embodied within PowerPlan's unique and sophisticated software solutions include not only its source code, but also, among other things, its system and database architecture, database model and schema, various unique and integrated features, functions, and components thereof, and manuals, user guides and other software documentation. PowerPlan will have no trouble showing that its software solutions, including but not limited to its database model, are not generally known by or available to the public, derive economic value from being not generally known by or available to others who could obtain economic value from their disclosure or use, and are the subject of reasonable efforts to maintain their secrecy.

As Lucasys knows, PowerPlan takes a number of steps to protect the secrecy of its software and associated proprietary information. These steps include requiring all its employees to sign employment agreements prohibiting use or disclosure of PowerPlan confidential information and trade secrets outside of their employment with PowerPlan – exemplified by the agreements signed by Messrs. Lantukh, Chang, and Strang. These steps also include licensing its software to customers pursuant to written license agreements in which the customer: (1) acknowledges PowerPlan's proprietary rights in and to the PowerPlan software and supporting materials; (2) agrees to maintain the confidentiality of this information using no less stringent procedures than

---

[1] PowerPlan also contends that Lucasys has misappropriated its trade secrets and infringed its copyright interests in additional ways, as summarized at pages 5-6 of my March 9, 2020 letter.

Jason Alloy, Esq.
May 4, 2020
Page 3

the strictest procedures used to protect its own confidential information; and (3) agrees not to disclose this information to third parties without the consent of PowerPlan.

**C. <u>There is Nothing Anti-competitive or Improper with PowerPlan Exercising its Confidentiality Rights Under its Software License Agreements by Withholding Consent for Its Customers to Provide Lucasys with Access to PowerPlan's Software or Associated Confidential Information.</u>**

The confidentiality and non-disclosure provisions in PowerPlan's software license agreements with customers are designed to protect PowerPlan's substantial and ongoing investment in its proprietary software solutions, and are standard, reasonable, and entirely legal. "Non-disclosure agreements designed to protect intellectual property rights such as trade secrets from unauthorized use by competitors do not generally raise antitrust concerns because '[n]othing in the antitrust laws gives one producer a right to sponge off another's intellectual property." ABA Section of Antitrust Law, Antitrust Law Developments (8th ed. 2017) at 11 (*quoting IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 585 (7th Cir. 2002).

Lucasys is developing and seeking to sell software that competes with PowerPlan's software, and is misusing its proprietary knowledge of PowerPlan's software to do so. To protect its intellectual property, PowerPlan is entitled to withhold consent to Lucasys being provided with access to PowerPlan's proprietary software and associated confidential information through consulting engagements with PowerPlan's customers while Lucasys is simultaneously developing, marketing, and selling the same kind of software to the same customer base in competition with PowerPlan. Allowing this would create an intolerable risk that Lucasys will continue to misuse and misappropriate PowerPlan's confidential information and trade secrets and unfairly use them to develop, market, and sell its competing software – which could endanger PowerPlan's trade secret rights developed at substantial time and expense. It also would create a conflict of interest for Lucasys, because Lucasys has financial incentive for its consulting customers to be dissatisfied with the very software (PowerPlan's) it was retained to help implement or support.

Under these circumstances, there is nothing anti-competitive or improper with PowerPlan exercising its confidentiality rights under its software license agreements by withholding its consent for customers to provide Lucasys with access to PowerPlan's software or associated confidential information – as it did with Liberty Utilities/Algonquin. The Supreme Court determined a century ago that "[i]n the absence of any purpose to create or maintain a monopoly, the [Sherman] act does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." *United Stated v. Colgate & Co.*, 250 U.S. 300, 307 (1919). More recently, the Court reiterated that "[a]s a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms and conditions of that dealing." *Pac. Bell Tel. Co. v. Linkline Commc'ns*, 555 U.S. 438, 448 (2009).

The Eleventh Circuit also has recognized that even a business with substantial market power does not have a duty to help its rivals absent unusual circumstances. In *Morris*

Jason Alloy, Esq.
May 4, 2020
Page 4

*Communications Corp. v. PGA Tour, Inc.*, 364 F.3d 1288 (11th Cir. 2004), the Court determined that the PGA Tour's requirement that media companies delay their publication of scores from PGA tournaments did not violate Section 2 of the Sherman Act, because "[e]ven a company with monopoly power has no general duty to cooperate with its business rivals and may refuse to deal with them if valid business reasons exist for such refusal." *Morris Commc'ns*, 364 F.3d at 1295 (citation omitted). In *Morris Communications*, the Court discounted the PGA's prior willingness to provide unrestricted access to golf scores as irrelevant, as "PGA Tour has a right to control its property interests regardless of its past practices." *Id.* at 1296 n.13. The Court accepted PGA's non-pretextual business justification that it was trying to prevent plaintiff from free riding on the PGA's technology. *Id.* at 1295-96.

The facts of *Sitelink Software, LLC v. Red Nova Labs, Inc.*, 2016 WL 3918122, at *1 (N.C. Superior Ct. June 14, 2016), are particularly instructive. Sitelink maintained a "partner" program through which it allowed third-party internet-based-service providers to use its API to access real-time data for mutual customers. Defendant Red Nova was one such third-party internet-based-service provider using Sitelink's API access. Through this relationship, Sitelink entered a license agreement directly with Red Nova. SiteLink's API license provided that no service provider may use SiteLink's API if the service provider competes with SiteLink. *Id.* at *4 When Sitelink found out that Red Nova was developing a competing product, Sitelink terminated the agreement.

Red Nova argued that Sitelink's license agreement violated North Carolina's state antitrust law. The court rejected Red Nova's argument, and granted Sitelink's motion to dismiss, because "[a]s a general rule, antitrust law does not limit a business's right to choose with whom it will deal and to refuse to deal with others." *SiteLink*, at *7. Sitelink argued that "it would be wholly improper for it to be required to allow Red Nova access to its API for the very purpose of being SiteLink's competitor." *Id.* at *8 The court observed: "[a] claim that one competitor must allow another competitor access to its platform is a difficult one to sustain." *Id.* at *8 (*citing Olympia Equip. Leasing Co. W. Union Tel. Co.*, 797 F.2d 370, 375 (7th Cir. 1986), *cert. denied*, 480 U.S. 934 (1987) ("[I]t is clear that a firm with lawful monopoly power has no general duty to help its competitors, whether by a holding a price umbrella over their heads or by otherwise pulling its competitive punches.")).

As was the case in *Sitelink*, PowerPlan has no obligation to do business with a competing software provider such as Lucasys, or to provide consent to its customers providing Lucasys with access to PowerPlan's proprietary software solutions and associated confidential information. PowerPlan has a legitimate business justification in withholding such consent from its customers such as Liberty Utilities/Algonquin, given the confidentiality provisions in its software license agreements; the need to take reasonable steps to protect and limit access to its confidential information and trade secrets; and Lucasys' already demonstrated intent to misuse PowerPlan's proprietary information to develop competing software.[2]

---

[2] PowerPlan learned that Lucasys was hired by Liberty/Algonquin as a consultant to participate in designing of new PowerPlan software being implemented by Algonquin. This engagement would have required Lucasys to have intimate access to PowerPlan's software solutions and associated

Jason Alloy, Esq.
May 4, 2020
Page 5


Nor does PowerPlan's enforcement of the confidentiality provisions in its software license agreement with its customers amount to a tortious interference with Lucasys' customer relationships or contracts with these same customers. First, PowerPlan does not act improperly or without privilege in withholding consent to customers providing Lucasys with access to PowerPlan's software and associated confidential information, but rather acts in accordance with its rights in its software license agreements with the customers. In addition, "[PowerPlan] cannot, as a matter of law, tortiously interfere with [Lucasys'] business or contractual relations unless [Lucasys] establishes that [PowerPlan] is a 'stranger' to the business or contractual relations in question." *Britt/Paulk Ins. Agency v. Vandroff Ins. Agency,* 952 F. Supp. 1575, 1584 (N.D. Ga. 1996) (holding as a matter of law that defendant was not a stranger to the business and contractual relations at issue). Here, there can be no dispute that PowerPlan is not a "stranger" to its own software license agreements with customers, or to Lucasys' actual or proposed contractual or business relationship with the same customers to provide consulting services related to PowerPlan's software.

For the reasons summarized in this letter, PowerPlan declines Lucasys' demand to cease and desist from exercising its rights, under the confidentiality provisions in its software license agreements with its customers and applicable law, to withhold its consent to customer's use of Lucasys as a consultant for and with continuing access to PowerPlan software and associated confidential information. To be clear, PowerPlan has no problem with its customers retaining Lucasys to consult on projects that will not involve access to, disclosure of, or working with PowerPlan's software or confidential information.

Your letter suggests that Lucasys "would consider a confidentiality agreement that would protect limited, legitimate interests" – which I presume refers to a confidentiality agreement between PowerPlan and Lucasys. Under the circumstances, PowerPlan has no interest in providing Lucasys with access to its software and associated confidential information, even under a confidentiality agreement. In addition, a confidentiality agreement would not address the conflict of interest resulting from Lucasys providing consulting services for customers' PowerPlan software at the same time it is developing and seeking to sell competing software to the same customers, or Lucasys' ongoing unauthorized misappropriation of its proprietary knowledge of PowerPlan's software, including but not limited to PowerPlan's database model, to develop its integration of its software modules with PowerPlan databases and other aspects of its competing software. If Lucasys wants to resolve its disputes with PowerPlan, it needs to propose something to address and resolve those issues to PowerPlan's satisfaction. Otherwise, PowerPlan will

---

confidential information and materials relating to the PowerPlan software. Accordingly, PowerPlan informed Liberty/Algonquin that it could not consent to Lucasys being provided with this access to PowerPlan's software and associated confidential information at the same time it was developing competing software. PowerPlan further explained that it would have no problem with Liberty/Algonquin retaining Lucasys for projects that would not require access to or disclosure of PowerPlan's software or confidential information. Your stated understanding that PowerPlan threatened Liberty Utilities with legal action is incorrect.

Jason Alloy, Esq.
May 4, 2020
Page 6

continue to take appropriate steps to protect its intellectual property rights in its proprietary software solutions and associated confidential information and trade secrets.

Finally, given the state of the law as summarized in this letter and Lucasys' failure to cite any law in support of its contentions, PowerPlan would consider Lucasys' pursuit of antitrust, tortious interference, or unfair competition claims to be undertaken in bad faith with the intent to buy more time to misappropriate PowerPlan's proprietary information.

PowerPlan expressly reserves all of its rights, claims, remedies, and defenses related to these matters.

Very truly yours,

Mark S. VanderBroek

MSV:jb

Cc:    Mr. Jim Dahlby
       Jonathan Sucher, Esq.
       Lloyd Farr, Esq.
       Peter Munk, Esq.