## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

LUCASYS INC.,

      *Plaintiff*,

v.

POWERPLAN, INC.,

      *Defendant*.

Civil Action File

No.: 1:20-cv-2987-AT

**JURY TRIAL DEMANDED**

## REPLY IN SUPPORT OF MOTION FOR ORDER REQUIRING PRE-DISCOVERY IDENTIFICATION OF TRADE SECRETS

PowerPlan's arguments as to why it should not be required to specify the trade secrets at issue highlight the reason Lucasys brought this action in the first place. PowerPlan does not now have, and never did have, any basis for thinking that Lucasys stole its trade secrets. Instead, PowerPlan is desperately hoping it will be able to find something in discovery to justify its exclusionary conduct towards a competitor.

The timeline here is critical. On October 30, 2019, PowerPlan sent a lengthy cease-and-desist letter to Lucasys accusing Lucasys of misappropriating PowerPlan trade secrets. But it was not until December 2019, more than a month later, that the parties began the "Agreed Process" in which Lucasys provided information about its software to PowerPlan. [Dkt. 50 at 1-4, 9.] Thus, any

information obtained by PowerPlan in the Agreed Process was *after* PowerPlan had already accused Lucasys of misappropriating trade secrets. But PowerPlan has shockingly conceded in its response brief that without "materials [from the Agreed Process], PowerPlan's current counsel cannot provide Lucasys the level of detail that it requests regarding the trade secrets that Lucasys has misappropriated." [Dkt. 50 at 9.]. If PowerPlan cannot specify what trade secrets are at issue in this case without receiving additional information from the Agreed Process, it could not possibly have had a basis to accuse Lucasys of misappropriation in the first place. This, of course, is an important concession that supports Lucasys' antitrust and other claims.

Potentially realizing the problem with their primary argument, PowerPlan asserts another reason it needs discovery before specifying its trade secrets: that Lucasys has filed a defamation claim. [Dkt. 50 at 10.] PowerPlan says that Lucasys has "injected" the trade secrets issue into the case, and it purportedly needs discovery to establish the "truth" of the statements about the theft of its own trade secrets. Again, PowerPlan is effectively conceding that it had no factual basis to support its statements to Lucasys customers regarding Lucasys' purported theft of trade secrets. PowerPlan's employees should know to which trade secrets they

were referring at the time they made the statements. There is no need to await

discovery from Lucasys before specifying them.

There is, indeed, "gamesmanship" afoot, as PowerPlan has contended in its

response brief [Dkt. 50 at 3]. But PowerPlan is the perpetrator, not the victim.

PowerPlan is fishing for something (anything) that it can claim was based on a

theretofore unspecified "trade secret." PowerPlan will then tailor its claimed trade

secrets around what it finds.

Courts have wisely determined that is not how trade secret litigation should

work. The time has come for PowerPlan to identify the purported trade secrets that

it has claimed have been at issue since <u>2019</u>. It did not do so in its correspondence

with Lucasys or its customers, or in its counterclaim—a point barely contested in

the response brief. The Court should not permit PowerPlan to continue pressing

baseless claims without making clear exactly what trade secrets it believes were (or

could have been) misappropriated by Lucasys.

## **ARGUMENT**

## I.     **The Agreed Process argument is a red herring.**

Defendant focuses heavily on their current counsel not being permitted

access to information shared by Lucasys as part of the "Agreed Process." This

argument is a distraction.

As PowerPlan alleges in its own counterclaim, the Agreed Process was one in which Lucasys shared information about its software with PowerPlan's prior counsel to avoid litigation. [Dkt. 36, p. 38, ¶ 58; *see* Dkt. 45-2 (noting that PowerPlan terminated the agreed process on April 17, 2020).] The Agreed Process began when the parties executed nondisclosure agreements that were effective as of December 4, 2019. (*See* Ex. A.) The parties undertook the Agreed Process only *after* PowerPlan had sent a cease-and-desist letter to Lucasys on October 30, 2019. [Dkt. 36, p. 37 ¶ 56.] The Agreed Process also began only *after* PowerPlan had written at least one letter to a Lucasys customer instructing the customer to cease providing Lucasys with access to the customer's data. [Dkt. 18-3.] Accordingly, unless the threats and customer interference were baseless, PowerPlan must have identified what trade secrets were purportedly stolen by Lucasys *before* the Agreed Process took place.

Given this chronology, it is truly incredible that PowerPlan conceded in its brief that without "materials [from the Agreed Process], PowerPlan's current counsel cannot provide Lucasys the level of detail that it requests regarding the trade secrets that Lucasys has misappropriated." [Dkt. 50 at 9.] That concession is tantamount to a confession that the cease-and-desist letter and customer

-4-

interference communications were made without support for PowerPlan's allegations.

PowerPlan should know (and should have known long ago) exactly what trade secrets it has, and the Court should require PowerPlan to specify them in detail. The only reason for PowerPlan not to do so is the obvious one—it hopes to find something in Lucasys software or documents that it can then attempt to mold a trade secret around. The Court should not condone that tactic, and countering it is an explicit reason why courts have repeatedly ordered trade secret plaintiffs to specify the content of their claimed trade secrets before discovery. *See, e.g., DeRubeis v. Witten Technologies, Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. April 23, 2007) ("[R]equiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that [the plaintiff] will not mold its cause of action around the discovery it receives."); *Argos USA LLC v. Young*, No. 1:18-CV-02797-ELR, 2021 WL 3081332, at *7 (N.D. Ga. Feb. 2, 2021) ("Plaintiff apparently seeks to obtain whatever discovery it can . . . and subsequently designate its trade secrets accordingly. These types of requests are precisely the kind of disfavored 'fishing expeditions' contemplated by the policy considerations supporting pre-discovery designation.").  In short, the argument about the Agreed Process is a red herring,

because that process did not take place until PowerPlan had already accused

Lucasys of stealing its trade secrets to both Lucasys and customers.

## II.    PowerPlan should know what trade secrets allegedly prove the truth of the statements that PowerPlan made.

PowerPlan next contends that it need not identify its purported trade secrets

at the outset of this litigation because Lucasys has "injected the question" into the

case by virtue of bringing defamation claims. [Dkt. 50 at 10.) Because truth is a

defense to defamation, the argument goes, PowerPlan should get discovery before

spelling out its trade secrets. It is unclear why a defamation claim would prohibit

PowerPlan from specifying its trade secrets, and PowerPlan does not cite any cases

on point.

Lucasys alleges that PowerPlan employees told Lucasys customers that

Lucasys was stealing PowerPlan trade secrets. If PowerPlan intends to prove that

the statements were true, it should already be able to specify exactly which

purported trade secrets were at issue. After all, its employees made the statements

at issue. PowerPlan counsel can simply ask them, "when you told Lucasys

customers that Lucasys stole PowerPlan trade secrets, which ones were you talking

about?"

If they cannot answer that simple question, it once again proves that PowerPlan's accusations were baseless, and that PowerPlan is engaged in a "fishing expedition" of the sort this court has expressly disapproved. *Argos USA, LLC*, 2021 WL 3081332, at *7.

This argument, too, highlights why PowerPlan resists identifying the purported trade secrets—it has not yet decided what they are.  But the time to make that determination was in 2019 before PowerPlan falsely accused Lucasys of stealing trade secrets, or, at a minimum, before PowerPlan filed a counterclaim alleging that trade secrets have been misappropriated.  Lucasys' defamation claim does nothing to distinguish this case from the cases cited in Lucasys opening brief. If anything, PowerPlan's response makes it even more clear why it should be required to specify its purported trade secrets now, before it has a chance to "mold its cause of action around the discovery it receives." *DeRubeis*, 244 F.R.D. at 681.

## III.   PowerPlan's document requests are far broader than the single example pointed out in their response brief.

For its final argument, PowerPlan cherry picks one of its sixty-one requests for the production of documents to argue that there will be no difficulty for the Court to determine what is or is not relevant. The document request they quote was noted in Lucasys opening brief merely as an example in an entirely different

section of the brief. [Dkt. 45 at 17.] PowerPlan's discovery requests are far broader

than that one request. For instance, PowerPlan seeks production of:

> All documents, including but not limited to, conceptual plans, design documents, source code, the process used to design or develop, marketing materials, presentations, business plans, or demonstrations related to any software product that Lucasys has sold or licensed to any customer, or plans to sell or license to any customer.

PowerPlan has also requested production of:

> All documents referring or relating to the research, design, developments, and/or improvement of your consulting services or any software product.

In order for the Court and Lucasys to evaluate whether or not documents that

fall within the literal terms of these (and numerous other) broad document requests

are even relevant to this action, PowerPlan must specify the trade secrets that are

purportedly at issue. Not every demonstration or presentation of Lucasys software

will implicate whatever the supposed trade secrets are. As the cases cited in

Lucasys' opening brief make clear, early specification of the trade secrets at issue

has the potential to eliminate or narrow discovery disputes. *See DeRubeis*, 244

F.R.D. at 680. PowerPlan's cherry-picked example does nothing to undermine that

broad principle.

More fundamentally, the ease of responding to a particular discovery request does nothing to eliminate the risk that "a plaintiff, seeking to disadvantage the defendant competitor, might make broad and unspecified charges of misappropriation, obtain full disclosure of the defendant's processes, and then tailor its own claims accordingly." *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, 2012 WL 3113162, at *1.  PowerPlan's conduct before this suit was filed, coupled with its arguments and reticence even now to specify what trade secrets are at issue, demonstrate that this is more than a risk—it is PowerPlan's entire strategy for squashing an upstart who is developing "software products which are designed to compete with PowerPlan's software." (Dkt. 50 at 7-8.) The Court should not allow that strategy to succeed.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Lucasys' opening memorandum of law, Lucasys respectfully requests the Court to order PowerPlan to specify its purported trade secrets with particularity.

This 17th day of November, 2021.

> /s/ Jason S. Alloy
> Richard L. Robbins
> Georgia Bar No. 608030
> rrobbins@robbinsfirm.com
> Jason S. Alloy
> Georgia Bar No. 013188
> jalloy@robbinsfirm.com
> Joshua A. Mayes
> Georgia Bar No. 143107
> jmayes@robbinsfirm.com
> Evan C. Dunn
> Georgia Bar No. 535202
> edunn@robbinsfirm.com
> Robbins Alloy Belinfante Littlefield LLC
> 500 14th Street, N.W.
> Atlanta, GA 30318
> (678) 701-9381
> (404) 856-3255 (fax)
>
> Aaron Gott (admitted *pro hac vice*)
> aaron.gott@bonalawpc.com
> BONA LAW PC
> 331 2nd Avenue South #420
> Minneapolis, MN 55401
> (612) 284-5001
> Jarod Bona (admitted *pro hac vice*)
> jarod.bona@bonalawpc.com
> Jon Cieslak (admitted *pro hac vice*)
> jon.cieslak@bonalawpc.com
> BONA LAW PC
> 4275 Executive Square, Suite 200
> La Jolla, CA 92037
> (858) 964-4589
> (858) 964-2301 (fax)
>
> *Counsel for Plaintiff Lucasys Inc.*

# EXHIBIT A

DEC. 4, 2019

**AGREED PROCESS FOR INFORMATION EXCHANGE AND DISPUTE RESOLUTION BETWEEN POWERPLAN, INC. AND LUCASYS, INC. AND ITS PRINCIPALS**

## <u>Introduction and Background</u>

PowerPlan, Inc. ("PowerPlan") has sent a letter to Lucasys, Inc. ("Lucasys") and its principals, Vadim Lantukh ("Lantukh"), Daniel Chang ("Chang"), and Stephen Strang ("Strang") (collectively the "Lucasys Parties," and with Lantukh, Chang, and Strang collectively referred to as the "Lucasys Individuals"), accusing the Lucasys Parties of misappropriation of PowerPlan's confidential and proprietary information and trade secrets (the "Protected Information"), including Protected Information relating to PowerPlan's software products and solutions (the "PowerPlan Software"), customers, and pricing, in connection with Lucasys' development, marketing and sale of software (the "Lucasys Software" further defined herein). The Lucasys Parties have responded to that letter, and deny PowerPlan's contentions.

In an effort to resolve this dispute without litigation, PowerPlan and the Lucasys Parties (collectively the "Parties") have agreed upon the general parameters of a process and associated conditions, as set forth in this document (the "Agreed Process"), for permitting PowerPlan to inspect and review the Lucasys Software (including architecture, databases, and source code) and development documents, and to obtain additional information and documents from Lucasys, in an expeditious manner and for the purpose of analyzing and comparing the parties' respective software products and thereafter discussing and seeking to resolve disputed issues between the parties.

## <u>The Agreed Process and Conditions</u>

A.    <u>Process for permitting PowerPlan inspection of Lucasys Software and exchange and review of other information and documents.</u>

1.    <u>PowerPlan representatives involved in inspection of Lucasys Software and review of related materials</u>:  The Parties agree that the following PowerPlan officers, employees and representatives will be permitted to have access to, review, inspect and discuss Lucasys Software (as defined below), including code and databases, and other confidential or highly confidential documents and information provided by Lucasys during this process, subject to the terms of a confidentiality and non-disclosure agreement ("Confidentiality Agreement") to be negotiated in good faith between the Parties:  Jim Dahlby, PowerPlan Vice President; Jonathan Sucher, PowerPlan Senior Corporate Counsel, PowerPlan's outside counsel at Nelson Mullins Riley & Scarborough (Mark VanderBroek, Lloyd Farr, and Peter Munk), and PowerPlan's third party software experts Sylvan Advisory & Consulting, LLC (Paul Pinto, Lou Brink, and Scott Robinson).

a.    "Lucasys Software" shall mean any software that Lucasys has developed or is in the process of developing, and at a minimum shall include but not be limited to the software modules, suites, applications, or solutions identified on the "Solutions" page of Lucasys' website;

1

provided, that Lucasys Software shall not include software developed by Lucasys solely for use in connection with consulting services provided by Lucasys in connection with other vendors' software.   Lucasys shall provide PowerPlan with a list and summary of its existing and contemplated Lucasys Software modules and applications, and the development stage of each, and PowerPlan will identify which of the modules and applications for which it wishes to inspect and review the software (including code and database components).

      2.    <u>General parameters of process</u> (subject to further refinement per agreement of the Parties):

      a.    <u>Document production</u>.   PowerPlan shall serve a request for documents upon Lucasys' attorneys, and Lucasys shall respond as to whether it possesses documents and thereafter produce on an expedited basis the requested documents and materials that it possesses, including but not limited to documents relating to Lucasys' business plan or executive summary, PowerPlan software, and Lucasys' development and marketing of Lucasys Software.   Lucasys reserves the right to object to production of documents it views as inappropriate, in which event the parties shall seek to resolve the objections in good faith.

      b.    <u>Demonstration of and Discussion about Lucasys Software.</u>   Lucasys shall provide to the PowerPlan representatives an in-person demonstration of each module, application, or tool associated with the Lucasys Software identified in Section 1(a) above which has been developed (with the demonstration to be on a running copy of the application software if one has been developed), and explain how each module, application, or tool was designed, developed, and tested, as well as why it believes it has not and is not misappropriating proprietary aspects of PowerPlan Software and/or competing with PowerPlan.   The Parties contemplate that there will be some discussion and questions and answers exchanged verbally in the meeting during and after the demonstration, in which the parties might generally discuss things like PowerPlan's concerns about misappropriation and Lucasys' responses to those.   The lawyers shall be permitted to stop questioning on particular topics as they think appropriate.   This demo and meeting is tentatively scheduled for December 18, 2019.   To encourage frank discussion, the discussions of the Parties during this demo and meeting shall be considered to be for purposes of settlement and subject to Fed. R. Evid. 408.

      c.    <u>PowerPlan Review and Inspection of Lucasys Software.</u>   At the completion of the demonstration and discussion meeting or on the following morning, Lucasys shall provide PowerPlan's expert with a copy of the applicable modules and applications of the Lucasys Software identified above (to be maintained in the possession of PowerPlan's expert pursuant to terms of the Confidentiality Agreement) to permit a detailed review and inspection by PowerPlan and its expert, and to include a comparison to PowerPlan Software.   Lucasys shall provide PowerPlan's expert with copies of and access to the following for each applicable module/application of the Lucasys Software:

i.      A running copy of the application software with a populated database;
ii.     The source code for all software application and database components; and

iii.     Access to the actual, or a copy of, the Product Development Life Cycle Management (PDLCM) tool used by Lucasys to manage the development of its applications.

d.     The Lucasys Software copies and other documents and information exchanged by and between the Parties will be subject to confidentiality/non-disclosure obligations set forth in the Confidentiality Agreement.  The PowerPlan representatives listed in Section A.1 of this Agreed Process will have access to the Lucasys Software and Lucasys documents subject to the Confidentiality Agreement.  In addition, PowerPlan may share with PowerPlan management and with Roper IP counsel high level general comments and summaries based on its representatives' review and analysis of the Lucasys Software and Lucasys documents, as long as the details of the Lucasys Completing Software, or other information or highly confidential materials are not shared beyond the persons permitted access to that.  Any individual or entity with whom PowerPlan shares information that it obtained under this agreement (even if by general comments or summary) must execute the Confidentiality Agreement.  Non-public Information shared by PowerPlan with Lucasys during this process, if any, shall also be treated as confidential by the Lucasys Parties under the Confidentiality Agreement.

B.     **Dispute Resolution Process.**  After PowerPlan completes its review and inspection of Lucasys' Software, it is the current intention of the Parties to schedule a settlement meeting or mediation during January to seek to discuss and resolve disputes between the Parties.

C.     **Other Conditions to This Process**.

1.     The Parties agree that in order to encourage good faith participation in the processes set forth in this Agreed Process, all delays in any party's filing of a complaint or motion to seek expedited relief or discovery after November 11, 2019 will not be used by the opposing party(ies) to argue that the filing party has delayed or waited too long to seek a preliminary injunction or other form of expedited relief (including expedited discovery).

2.     While this process is underway and unless and until the process is terminated by either party:

a.     Lucasys will temporarily suspend its marketing of and efforts to sell Lucasys Software to any new customers who use PowerPlan's software, but will be permitted to follow up on existing opportunities to sell Lucasys Software (including ones for which a bid is already submitted), and will be permitted to continue to maintain the status quo of its website and the two currently existing promotional videos as long as it doesn't add more videos or actively market or try to sell competing software other than as permitted in this subparagraph; and

b.     PowerPlan will temporarily refrain from discussing concerns about Lucasys' development, marketing and sale of competing software or misappropriating PowerPlan proprietary information with PowerPlan customers that are using Lucasys as consultants for their PowerPlan software (with the exception of NextEra and AEP and their affiliates, with whom PowerPlan may continue to have such discussions).

3

       c.     PowerPlan and Lucasys each reserve any and all rights, claims, remedies, and defenses they may have under the law as a result of whatever results from the discussions permitted to proceed under subsections C.2.(a) and (b) above.

       d.     Each party shall refrain from filing a lawsuit against the other until this Agreed Process terminates.

    3.     Any party to this Agreed Process may terminate the process at any time, by written notice to the other party's counsel (email is sufficient).

    4.     Upon termination or expiration of the Agreed Process:

       a.     If the Parties have resolved all of their disputes, all documents and materials exchanged by the Parties shall be returned to the producing party or destroyed, at the option of the producing party.

       b.     If the Parties have not resolved all of their disputes, the Parties may retain possession of all documents and materials exchanged by the Parties during the process, including any Lucasys Software in the possession of PowerPlan's expert, for thirty (30) days, and, if a lawsuit between some or all of the Parties is filed within those 30 days, for as long as the lawsuit is pending; provided, that the confidentiality obligations set forth in the Confidentiality Agreement shall continue to apply unless and until there is a Confidentiality or Protective Order entered as part of a lawsuit that supersedes the Confidentiality Agreement.

       c.     All confidentiality aspects of the process set forth in this Agreed Process shall survive termination or expiration of the process, unless and until a Confidentiality or Protective Order entered in a lawsuit between the Parties supersedes the Confidentiality Agreement.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I electronically filed the foregoing **REPLY IN SUPPORT OF MOTION FOR ORDER REQUIRING PRE-DISCOVERY IDENTIFICATION OF TRADE SECRETS** which is typed in Times New Roman 14 point in compliance with the local rule, with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all attorneys of record:

Petrina A. McDaniel
Petrina.mcdaniel@squirepb.com
Squire Patton Boggs (US) LLP
1230 Peachtree St., NE, Suite 1700
Atlanta, GA 30309

Damond R. Mace
Damond.mace@squirepb.com
Stephen M. Fazio
Stephen.fazio@squirepb.com
Squire Patton Boggs (US) LLP
4900 Key Tower
127 Public Square
Cleveland, OH 44114

This 17th day of November, 2021.

*/s/ Jason S. Alloy*
Jason S. Alloy