IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LUCASYS INC., <br><br> Plaintiff, <br><br> v. <br><br> POWERPLAN, INC., <br><br> Defendant. | CIVIL ACTION NO. <br> 1:20-cv-2987-AT |

## ORDER

In this antitrust case, Plaintiff Lucasys, Inc. brings claims against Defendant PowerPlan, Inc. for violations of the antitrust laws, tortious interference with business relations, defamation, and more, all in connection with products and services offered by the parties in the arena of tax software for rate-regulated utilities. Defendant previously moved to dismiss the majority of the claims. The Court denied that motion in full. After this denial, Defendant filed a Counterclaim for trade secrets violations under federal and Georgia law, unfair competition, and litigation expenses. Now before the Court is Plaintiff Lucasys's Motion to Dismiss the Counterclaim. [Doc. 49]. Because PowerPlan's allegations do not plausibly allege that Plaintiff misappropriated its trade secrets under governing law, Lucasys's Motion is **GRANTED**. However, the Court will permit PowerPlan to file an amended counterclaim if it seeks to cure the current pleading deficiencies.

**I.      Background[1]**

The Court previously provided a comprehensive outline of the facts of this case in its Order addressing Defendant's Motion to Dismiss. (*See* Order, Doc. 35.) Here, the Court focuses specifically on the allegations in the Counterclaim.

The Counterclaim alleges that PowerPlan has devoted substantial time, effort, and money over 25 years to develop its software and related data systems. (Counterclaim, Doc. 36 ¶ 2.) Embedded in the software and data systems are PowerPlan's trade secrets, described further below.

The three individuals who formed Lucasys in 2018 are Vadim Lantukh, Daniel Chang, and Stephen Strang. (*Id.* ¶¶ 3, 4.) All three were employees of PowerPlan at some point before they founded Lucasys. (*Id.* ¶ 3.) Specifically, Lantukh worked for PowerPlan from 2007 through 2013 as a manager of software implementation and later director of professional services (*id.* ¶ 22); Chang worked for PowerPlan from 2009 to 2014 as a consultant and later in managerial positions (*id.* ¶ 29); and Strang worked for PowerPlan from 2011 to 2015 as a senior consultant and later in a managerial position (*id.* ¶ 37). As PowerPlan employees, all three worked on projects where they had access to PowerPlan software, proprietary information, and trade secrets. (*Id.* ¶ 3) All three were subject to confidentiality and non-disclosure obligations prohibiting them from using or disclosing PowerPlan's proprietary information. (*Id.*) In addition, the

---

[1] The Court derives the factual background from Defendant's Counterclaim, which the Court presumes true for purposes of resolving Plaintiff's Motions to Dismiss. *See Duke v. Cleland*, 5 F.3d, 1399, 1402 (11th Cir. 1993).

Counterclaim alleges that another former PowerPlan employee, Vu Nguyen, has worked with Lucasys as an implementation partner. (*Id.* ¶ 48.) Nguyen worked for PowerPlan from 2007 to 2015 and was also subject to non-disclosure and confidentiality obligations. (*Id.* ¶¶ 49, 50.)

Since its founding, Lucasys, among other firms, has provided consulting services to customers, who are rate-regulated utilities, all of which use PowerPlan's software. (*Id.* ¶ 4.) As alleged, through these consulting contracts, Lucasys has been afforded continued access to PowerPlan's software. (*Id.*) Besides performing consulting work, Lucasys is also a nascent software competitor, attempting to develop and offer software products to rate-regulated utility customers. (*Id.* ¶ 5.) PowerPlan alleges on information and belief that Lucasys has — in developing its own software using the knowledge gained by Lantukh, Chang, and Strang — misappropriated PowerPlan's proprietary information and trade secrets. (*Id.*) The alleged trade secrets include "information embodied in PowerPlan's proprietary Software architecture, databases and database models, unique functions and features, processes, methods, algorithms, and (potentially) source code." (*Id.*) The trade secrets are not identified with any further specificity.

Accordingly, in the Counterclaim, PowerPlan asserts claims for: a violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, (Count I); a violation of the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 (Count II); unfair competition based on the same alleged misappropriation of trade secrets (Count III); and recovery of litigation expenses under O.C.G.A. § 13-6-11 (Count IV).

After PowerPlan filed its Counterclaim, Lucasys first filed a motion requesting that PowerPlan be required to identify its trade secrets with specificity. (Doc. 45.) The Court granted that motion. (Doc. 75.) In the instant Motion, Lucasys seeks dismissal of the Counterclaim for failure to state a claim. The motion to dismiss has been fully briefed and is now ripe for resolution.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For the purposes of a motion to dismiss, the court must accept all factual allegations in the counterclaim as true; however, the court is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a [counterclaim], they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although the plaintiff is not required to provide "detailed factual allegations" to survive dismissal, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555, 570; *Iqbal*, 556 U.S. at 678.

## III. Discussion

In seeking dismissal, Lucasys contends that PowerPlan cannot maintain substantive claims for trade secrets violations because it has alleged only that Lucasys's founders had *lawful access* to proprietary information and has not

provided plausible factual allegations to support that Lucasys ever *used or misappropriated* PowerPlan's trade secrets in developing its own software. (Brief in Support of Motion to Dismiss ("Mot."), Doc. 49-1 at 4-5) ("[T]he allegations of misuse are based entirely on 'information and belief,' and they are totally lacking in factual content."). Responding, PowerPlan argues that its allegations that Lucasys misappropriated PowerPlan's trade secrets, although alleged upon information and belief, are plausible when read in the context of the full Counterclaim and in light of the roles that Lantukh, Chang, and Strang played at PowerPlan and then in later founding Lucasys. (Def. Resp., Doc. 52 at 2.) PowerPlan also argues that, because the details of Lucasys's alleged misappropriation are exclusively within the possession of Lucasys, its allegations upon information and belief are sufficient at this stage. (*Id.*)

"A claim for misappropriation of trade secrets under the Georgia Trade Secrets Act requires a plaintiff to prove that '(1) it had a trade secret and (2) the opposing party misappropriated the trade secret.'" *Cap. Asset Research Corp. v. Finnegan*, 160 F.3d 683, 685 (11th Cir. 1998) (citing *Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1410 (11th Cir. 1998). The federal trade secrets statute, the Defendant Trade Secrets Act, 18 U.S.C. § 1836, "requires the same showing, but with the additional requirement that the trade secret 'is related to a product or service used in, or intended for use in, interstate or foreign commerce.'" *Johnson Matthey Process Techs., Inc. v. Hovey*, 2021 WL 5513988, at *3 (S.D. Ga. July 8, 2021) (quoting *Argos USA LLC v. Young*, 2019 WL 4125968,

5

at \*5 (N.D. Ga. June 28, 2019) (quoting *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1348 (N.D. Ga. 2017)); *see also AWP, Inc. v. Henry*, 2020 WL 6876299, at \*3 (N.D. Ga. Oct. 28, 2020) (same); *U.S. Sec. Assoc. v. Lumby*, 2019 WL 8277263, at \*10 (N.D. Ga. Sept. 25, 2019) (same).

For purposes of its Motion, Lucasys does not contest that PowerPlan has alleged that it has trade secrets in the information embodied in its software and databases. At issue is whether PowerPlan has plausibly alleged the second element of a trade secrets claim: misappropriation.

Under both the Georgia Trade Secrets Act and the federal Defendant Trade Secrets Act, a defendant misappropriates a trade secret when that defendant (1) "acquires a trade secret from someone the defendant has reason to know acquired the trade secret by improper means" or (2) "when the defendant 'discloses or uses a trade secret of another, without express or implied consent, knowing that at the time of disclosure or use the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.'" *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1338 (N.D. Ga. 2007) (quoting *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1292 (11th Cir. 2003) (and citing 18 U.S.C. § 1839(5); O.C.G.A. § 10-1-761(2)). "Misappropriation need not be actual, as threatened misappropriation" constitutes actionable conduct. *Hovey*, 2021 WL 5513988, at \*3 (citing 18 U.S.C. § 1836(b)(3)(A)(i); O.C.G.A. § 10-1-762. Under both statutes, acquisition of trade secrets by "improper means," includes by theft,

bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy. *Id.* (citing 18 U.S.C. § 1839(6); O.C.G.A. § 10-1-761(1)).

Here, PowerPlan argues that it has properly pled misappropriation because it has alleged, upon information and belief, that Lucasys acquired trade secrets from Lantukh, Chang, or Strang. (Def. Resp., Doc. 52 at 9-10) (citing Counterclaim ¶¶ 65, 75.) PowerPlan relies exclusively on the nature of the roles played by Lantukh, Chang, and Strang as former PowerPlan employees with access to proprietary information and then as founders of Lucasys. (Def. Resp., Doc. 52 at 5) (highlighting the allegation that it is "virtually impossible for [Lantukh] and Lucasys to design and develop the Lucasys software without relying on confidential and proprietary aspects of PowerPlan Software" in light of Lantuk's many years working with PowerPlan Software). In the Counterclaim, PowerPlan does not allege that Lantukh, Chang, or Strang acquired any trade secrets by improper means (theft, bribery, etc.). PowerPlan also does not allege with any specific facts how Lucasys may have used, or threatened to use, any trade secrets, or even what particular trade secrets are at issue.

Georgia courts evaluating trade secrets claims have found that, "[a]t bottom, the mere possession of a trade secret is not enough to state a claim of threatened misappropriation." *AWP v. Henry*, 2020 WL 6876299, at *4 (N.D. Ga. Oct. 28, 2020) (citing *Del Monte v. Fresh Produce Co. v. Dole Food Co.*, 148 F. Supp. 2d 1326, 1338 (S.D. Fla. 2001); *see also Hovey*, 2021 WL 5513988, at *5 (S.D. Ga. July 8, 2021) ("It is not enough for Plaintiff to generally allege that Defendant Hovey's

7

possession of the trade secrets means that Defendant G.W. Aru has misappropriated the information"); *Painters Supply & Equip, Co. v. Barkwell*, 2020 WL 7051337, at *2 (N.D. Ga. Dec. 1, 2020) (granting motion to dismiss where the plaintiff "did not demonstrate a causal link between [the defendant-employee's] possession of an alleged trade secret and [the defendant-employer] obtaining business from [plaintiff's] customers"); *Putters v. RMax Operating, LLC*, 2014 WL 1466902, at *3 (N.D. Ga. Apr. 15, 2014) (finding no trade secret violation where trade secrets were undisputedly acquired lawfully through employment, and thus not through improper means, and there were no specific allegations of misuse by defendant) (citing *Onbrand Media v. Codex Consulting, Inc.*, 687 S.E.2d 168, 175 (Ga. Ct. App. 2009) ("Even assuming that the Defendants did have knowledge of the Plaintiffs' trade secrets, there is no evidence that any such information was obtained in any way other than by voluntary disclosure by the Plaintiffs.")).

In all of the cases upon which PowerPlan relies, the allegations involved some manner of acquisition of the trade secrets by improper means and/or specific allegations of the defendant's misuse of that information. *See Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.,* 2011 WL 1044899, at *5, 6 (N.D. Cal. Mar. 23, 2011) (denying motion to dismiss where complaint alleged that: defendant company recruited many employees of one of plaintiff companies (Foundry); those recruited employees passed Foundry's technical information to defendant *while still employed*; one individual *used Foundry's resources* while conducting

8

business for defendant; defendant company was funded in part by investments from employees still working for other plaintiff company (Brocade); and defendant *used Brocade's source code to launch its competing product*); *Novus Grp., LLC v. Prudential Fin., Inc.*, 2019 WL 4452708, at *7 (S.D. Ohio Sept. 17, 2019) (denying motion to dismiss where complaint alleged that individuals took specific trade secrets about innovative annuity product, disclosed them to new employer in violation of confidentiality agreement, and new employer released highly similar specific annuity product after exposure to secrets); *Calendar Rsch. LLC. v. StubHub, Inc.*, 2017 WL 10378336, at *4 (C.D. Cal. Aug. 16, 2017) (denying motion to dismiss as to StubHub where complaint alleged that individual improperly downloaded proprietary information, maintained access to source code, and sought to use that source code while working for StubHub, and where a different StubHub employee stated desire to incorporate plaintiff's source code into StubHub's existing and future applications); *AirWatch LLC v. Mobile Iron, Inc.*, 2013 WL 4757491, at *5 (N.D. Ga. Sept. 4, 2013) (denying motion to dismiss where complaint alleged that defendant used improper means in acquiring plaintiff's trade secrets by using false identities, email addresses, phone numbers, and fake business to access proprietary information).

Here, in making the argument that Lucasys *must have* misappropriated PowerPlan's trade secrets solely by virtue of Lantukh, Chang, and Strang's roles as former PowerPlan employees and subsequent founders of Lucasys, PowerPlan effectively asks the Court to adopt the "inevitable disclosure doctrine." This

9

doctrine allows a plaintiff to prove misappropriation of trade secrets by showing that a defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets. *See AWP*, 2020 WL 6876299, at \*4 (citing *Holton v. Physician Oncology Servs., LP*, 742 S.E.2d 702, 705 (Ga. 2013)). "The doctrine enables a trade secret owner to prevent a former employee from working for a competitor … by demonstrating the employee's new job will inevitably cause the employee to rely upon knowledge of the former employer's trade secrets. The doctrine may impose a noncompete covenant where one does not exist." *Id.*

As the Georgia Supreme Court has explained, "this theory remains the subject of considerable disagreement." *Holton*, 742 S.E.2d at 705. The *Holton* Court ultimately held that the inevitable disclosure doctrine "is not an independent claim under which a trial court may enjoin an employee from working for an employer or disclosing trade secrets" but declined to address whether the doctrine "may be applied to support a claim for the threatened misappropriation of trade secrets." *Id.* at 706. Since *Holton*, the Georgia Supreme Court has not shed further light on this issue.

In *AWP, Inc. v. Henry*, another judge in this district addressed an argument similar to the one made by PowerPlan here: that the nature of the relevant relationships were such that disclosure of trade secrets was inevitable and thus the complaint stated a claim for misappropriation of trade secrets. 2020 WL 6876299, at \*4-5. There, Judge Grimberg declined to adopt the inevitable disclosure doctrine under the facts of that case, noting that:

> To permit AWP to state a claim based solely on Puckett's and Temple's alleged possession of trade secrets—and AWP's speculation that they will ultimately be wielded against it—would be to drastically expand the scope of the GTSA and DTSA. Ostensibly, this would hold McNulty and L30 to a judicially-created restrictive covenant.

*Id.* at *5.

The Court finds that the same cautionary logic applies here. To allow PowerPlan to state a claim based exclusively upon the facts that Lantukh, Chang, and Strang had access to PowerPlan's vaguely-described trade secrets and, some years later, formed a competitor entity would effectively be to enforce permanent non-compete agreements where no such agreements existed. Without some allegations as to the specific trade secrets at issue (e.g., source code associated with a particular function or application); the manner in which Lucasys has threatened to use, or has used, those trade secrets; and/or specifics regarding any improper means by which Lantukh, Chang, or Strang acquired particular trade secrets, PowerPlan cannot maintain claims for trade secret violations.

The Court understands that the allegations here involve a situation somewhat distinct from others in that Lantukh, Chang, and Strang are not only employees of Lucasys but its founders. Nevertheless, PowerPlan has provided the Court with no authority in which a court has held that this distinction alone is sufficient to maintain trade secrets claims where there are no specific allegations that trade secrets were acquired by improper means and no allegations as to how, in particular, the defendant company has used or intends to use specific trade secrets at issue.

11

The Court also acknowledges the reality that much of the information as to Lucasys's actions is within the possession of Lucasys, not PowerPlan. The Court recognizes the authority cited by PowerPlan that pleading facts upon information and belief is appropriate where the facts are peculiarly within the possession of the defendant (or Plaintiff, here) or where the belief is based on factual information that makes the inference of culpability plausible. (See Def. Resp. at 7) (citing *Henderson v. One West Bank FSB*, 2011 U.S. Dist. LEXIS 163433, at *26 (N.D. Ga. July 25, 2011) *report and recommendation adopted*, 2011 U.S. Dist. LEXIS 163435 (N.D. Ga. Aug. 18, 2011); *Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338, 1357 (N.D. Ga. 2018)). But here, fully accepting the facts pled upon information and belief, the allegations are still conclusory and lack the requisite specificity to plausibly state a claim for trade secrets violations for the reasons articulated above.

For these reasons, the trade secrets claims, Counts I and II, are due to be dismissed as well as the derivative claims asserted in Counts III and IV.[2] The Court, however, will allow PowerPlan to, as requested, file an amended complaint and attempt to rectify the insufficiencies identified in this Order.

## IV. Conclusion

For the reasons above, Plaintiff Lucasys's Motion to Dismiss PowerPlan's Counterclaim [Doc. 49] is **GRANTED**. The Counterclaim is **DISMISSED**

---

[2] As Count III, for unfair competition, is based entirely on the alleged trade secrets violations, this claim fails as well. Count IV, for litigation expenses, is derivative of the substantive trade secrets claims and therefore also cannot proceed at this juncture.

**WITHOUT PREJUDICE**. PowerPlan shall have 30 days to file an amended counterclaim.

**IT IS SO ORDERED** this 10th day of May 2022.

_____
**Honorable Amy Totenberg
United States District Judge**