## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

LUCASYS INC.,

   *Plaintiff,*

     v.

POWERPLAN, INC.,

   *Defendant.*

Civil Action No.: 1:20-cv-02987-AT

Judge Amy Totenberg

## JOINT SUMMARY OF DISPUTED LEGAL ISSUES AND UNDISPUTED FACTS

Plaintiff Lucasys Inc. and Defendant PowerPlan, Inc. (collectively, the "Parties") identify the following disputed legal issues raised in the Parties' cross-motions for summary judgment (Docs. 181, 183).[1]

| Disputed Issue[2] | Lucasys' Arguments[3] | PowerPlan's Arguments[4] |
| --- | --- | --- |
| Whether PowerPlan is entitled to summary judgment that there has been no harm to competition from PowerPlan's conduct at issue in Lucasys' antitrust claims. | Doc. 191-1 at 18–21. | Doc. 182-1 at 22–25; Doc. 193-1 at 19–25. |
| Whether summary judgment should be granted to PowerPlan because PowerPlan's conduct at | Doc. 191-1 at 22–24. | Doc. 182-1 at 25–27; Doc. 193-1 at 25–26. |

---

[1] For the convenience of the Court, the below listed legal issues generally are presented in the order in which they arise in the Parties' respective motions and briefs and are not intended to imply any relative importance of one issue over another.

[2] The Parties' formulations of the disputed issues listed here do not address the appropriate burdens of proof and standard on a motion for summary judgment. Both Parties' positions on the appropriate burden and standard for each disputed issue are as described in their respective briefs at the identified page ranges.

[3] The identified page ranges for Lucasys' arguments refer to the pages indicated on the ECF document header and not the page numbers in the footer of the briefing.

[4] The identified page ranges for PowerPlan's arguments refer to the pages indicated on the ECF document header and not the page numbers in the footer of the briefing.

| Disputed Issue[2] | Lucasys' Arguments[3] | PowerPlan's Arguments[4] |
|---|---|---|
| issue in Lucasys' antitrust claims has procompetitive justifications that outweigh any anticompetitive effects. | | |
| Whether PowerPlan is entitled to summary judgment on Lucasys' claim that PowerPlan refused to supply customers with access to their data if the customers retained Lucasys. | Doc. 191-1 at 26–27. | Doc. 182-1 at 29–30; Doc. 193-1 at 8. |
| Whether PowerPlan is entitled to summary judgment on Lucasys' hub-and-spoke conspiracy claim. | Doc. 191-1 at 27–29. | Doc. 182-1 at 30–32; Doc. 193-1 at 11–12. |
| Whether PowerPlan is entitled to summary judgment on Lucasys' claim that PowerPlan's license agreements | Doc. 191-1 at 29–30. | Doc. 182-1 at 32–33; Doc. 193-1 at 9–10. |

| Disputed Issue[2] | Lucasys' Arguments[3] | PowerPlan's Arguments[4] |
|---|---|---|
| are impermissible exclusive dealing arrangements. | | |
| Regarding *Noerr-Pennington* immunity, whether PowerPlan's assertion of trade secret counterclaims was "objectively baseless." | Doc. 191-1 at 31–32 | Doc. 182-1 at 34–35; Doc. 193-1 at 15–19. |
| Regarding *Noerr-Pennington* immunity, whether PowerPlan's assertion of trade secret counterclaims was "an attempt to interfere directly with a competitor's business relationships, through the use of the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." | Doc. 191-1 at 32–33 | Doc. 182-1 at 35–36; Doc. 193-1 at 14–15. |

| Disputed Issue[2] | Lucasys' Arguments[3] | PowerPlan's Arguments[4] |
|---|---|---|
| Whether PowerPlan is entitled to summary judgment on Lucasys' claim related to the proposed Authorized Vendor Agreement. | Doc. 191-1 at 33–35. | Doc. 182-1 at 36–38; Doc. 193-1 at 12–13. |
| Whether PowerPlan is entitled to summary judgment because Lucasys has not suffered an antitrust injury. | Doc. 186-1 at 32–33; Doc. 191-1 at 35. | Doc. 182-1 at 39–40. |
| Whether PowerPlan is entitled to summary judgment on Lucasys' state law claims. | Doc. 191-1 at 36–39. | Doc. 182-1 at 41–45; Doc. 193-1 at 26–29. |
| Whether PowerPlan's Licensing Agreements are negative tying arrangements and illegal per se under Section 1 of the Sherman Act. | Doc. 186-1 at 15–28; Doc. 192-1 at 2–8 | Doc. 182-1 at 27–29; Doc. 190-1 at 15–27 |

| Disputed Issue[2] | Lucasys' Arguments[3] | PowerPlan's Arguments[4] |
|---|---|---|
| Whether the Rule of Reason or per se treatment applies to Lucasys' tying claim. | Doc. 186-1 at 15–16; Doc. 192-1 at 6–8. | Doc. 190-1 at 27–29. |
| As to tying claim, whether PowerPlan used economic coercion to preclude customers from using Lucasys for services. | Doc. 186-1 at 25–27; Doc. 191-1 at 25; Doc. 192-1 at 2–4. | Doc. 182-1 at 28–29; Doc. 190-1 at 15–24; Doc. 193-1 at 6–8. |
| As to tying claim, whether PowerPlan has a financial interest in the alternate sources of services. | Doc. 192-1 at 4–6. | Doc. 190-1 at 24–27. |
| As to tying claim, if the Rule of Reason applies, whether there has been injury to competition in the market for "Tax Services." | Doc. 191-1 at 24–26. | Doc. 182-1 at 29–31. |
| As to tying claim, whether proper definition of an antitrust | Doc. 186-1 at 28–32; Doc. 192-1 at 8–9. | Doc. 190-1 at 31–32. |

| Disputed Issue[2] | Lucasys' Arguments[3] | PowerPlan's Arguments[4] |
|---|---|---|
| market is an element of Lucasys' claims requiring proof of market or monopoly power. | | |
| As to tying claims, whether there is a relevant "Tax Software" product market. | Doc. 186-1 at 16–18; Doc. 192-1 at 9–13. | Doc. 190-1 at 32–38. |
| Whether there is a relevant "Tax Services" product market distinct from "Tax Software." | Doc. 186-1 at 18–19; Doc. 192-1 at 13–14. | Doc. 190-1 at 38–42. |
| Whether Lucasys is entitled to summary judgment that it has antitrust standing to assert its antitrust claims. | Doc. 186-1 at 32–33; Doc. 192-1 at 14–15. | Doc. 190-1 at 42–46. |

The Parties identify the following undisputed facts. The Parties, however, reserve all objections as to whether any particular fact constitutes a "material" fact for purposes of determining whether summary judgment is appropriate, as set forth in the Parties' respective filings. Additionally, PowerPlan maintains its position that Lucasys has not adequately defined a valid antitrust market for "Tax Software" or

"Tax Services," for any of its antitrust claims. Lucasys disputes PowerPlan's

position, as set forth in its respective filings.[5]

| ¶ | Statement of Undisputed Fact | Citation |
|---|---|---|
| 1 | Over the 28 years since it was founded, PowerPlan has innovated and invested substantial time and money developing dozens of proprietary software products that assist asset intensive businesses with a variety of operational and financial tasks. No one else has invested the time and money to create a full suite of interrelated software products with the breadth of functionality that PowerPlan software provides. PowerPlan's software products are complementary to enterprise resource | Doc. 193-2 ¶ 1. |

---

[5] PowerPlan's Reply in Support of Its Statement of Undisputed Material Facts mistakenly states that the following fact is undisputed: "In December 2019 and July 2020, PowerPlan sent letters to AEP expressing PowerPlan's concerns about Lucasys having access to PowerPlan's software, including its code and architecture, while Lucasys was simultaneously purporting to develop software products to directly displace PowerTax. These letters did not state that Lucasys had already misappropriated any trade secrets from PowerPlan. Ex. 16, POWERPLAN00000139; Ex. 17, POWERPLAN00000132." Doc. 193-2 ¶ 49. Lucasys responded that this fact is "Disputed as the documents are in writing and speak for themselves. (Doc. 154-1, Bertz Dep. at 302–303, 306.) Moreover, the statement is not supported by the cited evidence. For example, in the December 5, 2019 letter, Mr. Bertz, on behalf of PowerPlan, stated that Lucasys' continued access "creates an intolerable risk for us – and you – that Lucasys *may continue* or begin to misuse or misappropriate [PowerPlan's] confidential information and trade secrets and unfairly use them to develop, market, and sell its competing software." (*Id.* at 306.)." Doc. 191-2 ¶ 49.

| | | |
|---|---|---|
| | planning (ERP) software such as Oracle or SAP that PowerPlan's customers typically use for their accounts payable and receivable, management, human resources and financial reporting. Doc. 167, Deposition of Matthew Crye ("Crye Tr.") 212:1–7; Doc. 155, Deposition of Jamie Carr ("Carr Tr.") 226:5–9. | |
| 2 | One of PowerPlan's software suites is focused on income tax issues and includes six software modules, including U.S. Tax Depreciation, Canadian Tax Depreciation, Deferred Tax Accounting, Tax Provision, Tax Repairs, and Master Limited Partnerships. *See* Ex. 2, POWERPLAN01945174. | Doc. 193-2 ¶ 2. |
| 3 | Two of the Income Tax modules—the U.S. Tax Depreciation module and Deferred Tax Accounting module—are collectively referred to as "PowerTax." *See, e.g.*, Doc. 160, Deposition of Vadim Lantukh ("Lantukh Tr.") 33:7–13; Doc. 163, 30(b)(6) Deposition of Regulated Capital Consultants ("RCC Tr.") 124:3–12. | Doc. 193-2 ¶ 3. |
| 4 | From at least 2018 through the present, Defendant PowerPlan, Inc. ("PowerPlan") manufactured and sold a computer software | Doc. 192-2 ¶ 1. |

| | | |
|---|---|---|
| | product named PowerTax. (*Income Tax Suite*, PowerPlan, https://powerplan.com/solutions/income-tax-suite (last visited on April 11, 2023); PowerPlan 10.4 and PowerTax Overview (Depreciation and Deferred Tax Modules) (POWERPLAN01186333) (hereinafter, "PowerTax Overview"), attached hereto as Exhibit A.) | |
| 5 | PowerTax consists of two separate software modules. (Doc. 126, First Amended Complaint ("Amend. Comp.") ¶ 9; Doc. 129, Answer to a Complaint ("Answer") ¶ 9 (admitting that PowerPlan's "income tax related modules allow its customers to compute tax depreciation and deferred income taxes."); *Income Tax Suite*, PowerPlan, https://powerplan.com/solutions/income-tax-suite (last visited on April 11, 2023); Ex. A, PowerTax Overview; Doc. 160-1, July 14, 2022 Deposition of Vadim Lantukh ("Lantukh Dep."), excerpts attached hereto as Exhibit B, at 24:22–25:1, 33:10–11; Doc. 155-1, Apr. 22, 2022 Deposition of Jamie Carr ("Carr Dep."), excerpts attached hereto as Exhibit C, at 225:2–15; | Doc. 192-2 ¶ 2. |

| | Doc. 157-1, May 19, 2022 Deposition of Jason Cone ("Cone Dep."), excerpts attached hereto as Exhibit D, at 12:1–16.) | |
|---|---|---|
| 6 | One PowerTax module (the "Depreciation Module") calculates tax depreciation for fixed assets. (Doc. 126, Amend. Comp. ¶ 9; Doc. 129, Answer ¶ 9; *Income Tax Suite*, PowerPlan, https://powerplan.com/solutions/income-tax-suite (last visited on Apr. 6, 2023); Ex. A, PowerTax Overview.) | Doc. 192-2 ¶ 3. |
| 7 | The other PowerTax module (the "Deferred Tax Module") calculates fixed-asset-related deferred tax balances. (Doc. 126, Amend. Comp. ¶ 9; Doc. 129,  Answer ¶ 9; *Income Tax Suite*, PowerPlan, https://powerplan.com/solutions/income-tax-suite (last visited on Apr. 6, 2023); Ex. A, PowerTax Overview; Doc. 160-1, Lantukh Dep. at 24:22–25:1, 33:10–11.) | Doc. 192-2 ¶ 4. |
| 8 | Calculating and maintaining deferred tax balances is an essential business function for rate-regulated investor-owned utilities ("RRIOUs"). (Doc. 156-1, May 12, 2022 Deposition of Rob Yankovich ("Yankovich Dep."), excerpts attached hereto as Exhibit G, at 17:1–20, 29:7–32:3.) | Doc. 192-2 ¶ 6. |

| 9 | Some very small RRIOUs (meaning those with relatively few fixed assets) are able to calculate deferred tax balances using home-grown solutions, such as spreadsheets created in Microsoft Excel or a similar software application. (Doc. 163-1, RCC Dep. at 32:15–34:12, 124:13–23; Doc. 159-1, Duffy Dep. at 84:15–18.) | Doc. 192-2 ¶ 12. |
| --- | --- | --- |
| 10 | Home-grown solutions are not practical for RRIOUs of any significant size, including the vast majority of electrical and gas utilities. (Doc. 157-1, Cone Dep. at 84:8–85:4; Doc. 156-1, Yankovich Dep. at 19:22–20:10, 66:5–67:1; Doc. 163-1, RCC Dep. at 34:19–35:23.) | Doc. 192-2 ¶ 13. |
| 11 | PowerPlan licenses PowerTax to RRIOUs pursuant to written agreements ("License Agreements"). (Doc. 159-1, Duffy Dep. at 78:14–79:11; Doc. 158-1, Rutten Dep. at 30:18–32:1; Doc. 167-1, Crye Dep. at 50:24–51:1.) | Doc. 192-2 ¶ 33. |
| 12 | PowerPlan retains ownership of its software, and the customers license the ability to use PowerPlan's software via negotiated license agreements. *See* Doc. 167, Crye Tr. 50:24–51:1. | Doc. 193-2 ¶ 9. |

| 13 | Many of PowerPlan's PowerTax customers have perpetual license agreements, which have a one-time license fee (which includes access to upgrades and improvements) followed by annual fees for software maintenance. Doc. 158, Deposition of Joost Rutten ("Rutten Tr.") 38:2–13. Paying the maintenance fee allows customers to obtain software fixes and upgrades without paying a further license fee. *Id.* | Doc. 193-2 ¶ 10. |
| 14 | PowerPlan's License Agreements state that PowerPlan's consent is necessary before a customer can provide anyone with access to PowerPlan's "confidential information." (Doc. 159-1, Duffy Dep. at 172:10–173:23, 284:1–3; Doc. 159-1 at 579 (Pl.'s Ex. 127); Doc. 154-1 at 360 (Pl.'s Ex. 26).) | Doc. 192-2 ¶ 34. |
| 15 | PowerPlan has interpreted that provision in the License Agreements to require PowerPlan consent for any third party to be provided "front-end user access to PowerPlan's software" and "access to your PowerPlan database," among other things. (Doc. 154-1, Bertz Dep. at 104:9–23, 142:23–143:4, 176:5–15, 180:16–181:6, 240:5–22; Doc. 154-1 at 280, 302–03, 306, 360– | Doc. 192-2 ¶ 35. |

| | | |
|---|---|---|
| | 61 (Pl.'s Exs. 14, 19, 21, 26); Doc. 159-1, Duffy Dep. at 172:10–173:23, 284:1–3; Doc. 159-1 at 579 (Pl.'s Ex. 127).) | |
| 16 | Lucasys' agreements with its customers include provisions on protecting confidential information that are similar to PowerPlan's. *See, e.g.*, Ex. 3, Hilliard Report at pp.7, 12; *compare, e.g.*, Ex. 6, LucasysRPD0404775 at -777 (§ 2(c)) and -784 (§ 10(b)) *with* Ex. 4, POWERPLAN00018813 at -16 (§ 2.2(d)) and -18 (§ 5.3). | Doc. 193-2 ¶ 13. |
| 17 | As with most business software, a customer buying a license must install the software within the organization, test it, occasionally upgrade it, and otherwise support its operation. PowerPlan offers such services, called "professional services," related to its own software. *See, e.g.*, Doc. 167, Crye Tr. 50:10–51:17; Doc. 159, Duffy Tr. 80:2–10. | Doc. 193-2 ¶ 18. |
| 18 | Many RRIOUs use tax consulting and technical services. | Doc, 192-2 ¶ 14 |
| 19 | Numerous independent third-parties supply tax consulting and technical services to RRIOUs. | Doc. 192-2 ¶ 17. |

| 20 | PowerPlan provides tax consulting and technical services to RRIOUs. | Doc. 192-2 ¶ 18. |
|----|----|----|
| 21 | Lucasys was founded in May 2018 by Vadim Lantukh, a former PowerPlan employee. Doc. 160, Lantukh Tr. 49:21–50:6. | Doc. 193-2 ¶ 27. |
| 22 | During his time at PowerPlan, Mr. Lantukh primarily worked with the two PowerTax modules. *See* Doc. 160, Lantukh Tr. 33:3–17. | Doc. 193-2 ¶ 28. |
| 23 | Lucasys' other founders are former PowerPlan employees. Daniel Chang, who joined Lucasys as a co-founder in July 2019, performed professional services related to PowerTax as a former PowerPlan employee. Doc. 161, Deposition of Daniel Chang ("Chang Tr.") 22:24–23:1. Stephen Strang, who began work for Lucasys in May 2018 before joining as co-founder in August 2019, performed professional services with a focus on PowerTax as a PowerPlan employee. Doc. 162, Deposition of Stephen Strang ("Strang Tr.") 17:18–18:20. | Doc. 193-2 ¶ 29. |
| 24 | Lucasys sells professional services under master services agreements with its customers, and these agreements also allow | Doc. 193-2 ¶ 35. |

| | | |
|---|---|---|
| | customers to license software products from Lucasys. *See* Doc. 160, Lantukh Tr. 56:19–57:15. | |
| 25 | Lucasys currently claims to have developed four software products that a customer can license: Copilot, Deferred Tax, Depreciation, and Nova. *See* Ex. 8, Lucasys Response to Interrogatory No. 6; *see also* Doc. 162, Strang Tr. 108:6–9, 122:2–123:5, 155:5–23, 143:24–144:1. | Doc. 193-2 ¶ 39. |
| 26 | In 2023, Lucasys released its Deferred Tax product "specifically designed" for regulated utilities, and Lucasys claims that it is "the leading provider of tax technology and services for rate-regulated companies." *See Lucasys Surges Ahead with New Deferred Tax Solution*, GlobalNewswire (Mar. 30, 2023), https://lnkd.in/gZ6bw2uz. | Doc. 193-2 ¶ 40. |
| 27 | Lucasys claims its Deferred Tax and Depreciation solutions are substitute products for PowerPlan's Deferred Tax Accounting and U.S. Tax Depreciation modules (PowerTax). *See* Doc. 161, Chang Tr. 114:21–115:6; Doc. 160, Lantukh Tr. 121:9–19. | Doc. 193-2 ¶ 41. |

| 28 | PowerPlan first learned that Lucasys was developing competing software offerings in May 2019. (Doc. 155-1, Apr. 22, 2022 Deposition of Jamie Carr ("Carr Dep.") at 319 (Pl.'s Ex. 60).) | Doc. 193-3 ¶ 11. |
|----|----|----|
| 29 | American Electric Power ("AEP") has been using PowerPlan software since 1998 and throughout the years has invested in customizations to further develop PowerPlan capabilities. Ex. 9, POWERPLAN00002310. Over time, AEP licensed 13 software modules. Ex. 10, POWERPLAN00091331. | Doc. 193-2 ¶ 44. |
| 30 | In July 2019, AEP issued a Request for Proposal for Tax Fixed Assets, noting that it had not updated its PowerTax software since 2014–15. Ex. 11, LucasysRPD0034451; Ex. 45, POWERPLAN00112519. | Doc. 193-2 ¶ 45. |
| 31 | Both Lucasys and PowerPlan bid for the work. (*Id.* ¶ 29; Doc. 164-1, Dahlby Dep. at 46:20–24.) | Doc. 193-3 ¶ 30. |
| 32 | AEP issued a new RFP for tax and accounting services, and Lucasys was awarded the services work, which included data cleansing within the PowerTax software. Ex. 14, LucasysRPD0026484–88; Ex. 15, POWERPLAN00265013. | Doc. 193-2 ¶ 48. |

| 33 | NextEra Energy Service LLC ("NextEra") has been a customer of PowerPlan since 2001. Ex. 32, POWERPLAN00103198. | Doc. 193-2 ¶ 78. |
|---|---|---|
| 34 | NextEra licensed PowerTax in 2007. Ex. 33, POWERPLAN00039009. | Doc. 193-2 ¶ 79. |
| 35 | In the summer of 2019, Florida Power & Light, also known as NextEra Energy ("FPL") issued a request for proposals to provide Tax Services to FPL. (Doc. 167-1 at 394 (Pl.'s Ex. 249).) | Doc. 192-2 ¶ 36. |
| 36 | PowerPlan and Lucasys both submitted bids to FPL to provide those services. (Doc. 155-1, Carr Dep. at 126:1–4; Doc. 155-1 at 308 (Pl.'s Ex. 58).) | Doc. 192-2 ¶ 37. |
| 37 | One of the first contracts that Lucasys won came in response to a request for proposal ("RFP") issued by Florida Power & Light ("FPL"), also known as NextEra Energy, in March 2019. (Doc. 186-2, Pl.'s SUMF ¶¶ 36, 38; Ex. D, Lantukh Dec. ¶¶ 39–40.) | Doc. 193-3 ¶ 18. |
| 38 | PowerPlan also bid on the FPL contract but was not awarded the contract. (Doc. 155-1, Carr Dep. at 126:1–4; *id.* at 389 (Pl.'s Ex. 90) (discussing the "wake of [PowerPlan] losing the FPL RFP").) | Doc. 193-3 ¶ 24. |

| 39 | FPL awarded the contract to Lucasys. (Doc. 155-1, Carr Dep. at 124:23–125:10; Doc. 155-1 at 308 (Pl.'s Ex. 58).) | Doc. 192-2 ¶ 38. |
| 40 | FPL notified Lucasys in July 2019 that it had won the contract with work set to begin on October 1, 2019. (*Id.* ¶ 40.) | Doc. 193-3 ¶ 20. |
| 41 | PowerPlan contacted FPL as to who won the RFP, and FPL notified PowerPlan that it had awarded the contract to another company. (Doc. 164-1, Aug. 5, 2022 Deposition of Jim Dahlby ("Dahlby Dep.") at 292 (Pl.'s Ex. 195).) | Doc. 193-3 ¶ 25. |
| 42 | On July 22, 2019, Jim Dahlby, PowerPlan's Vice President of Growth Strategy, communicated to Brett Bertz, PowerPlan's Chief Customer Officer, that the lost FPL Tax Services bid was one that "the Lucasys letter to FPL could impact." (Doc. 164-1, Dahlby Dep. at 10:18–11:3; Doc. 164-1 at 291 (Pl.'s Ex. 195); Doc. 154-1, Bertz Dep. at 8:5–9.) | Doc. 192-2 ¶ 41; Doc. 193-3 ¶ 27. |
| 43 | SUEZ North America, Inc. ("SUEZ") has been a customer of PowerPlan since September 2014, when it licensed approximately eight software modules, including PowerTax. Ex. 4, POWERPLAN00018813. | Doc. 193-2 ¶ 55. |

| 44 | Lucasys submitted a proposal to SUEZ in August 2019 for its Deferred Tax and Copilot software, as a purported replacement for PowerTax's Deferred Tax module. Ex. 18, LucasysRPD0148674. | Doc. 193-2 ¶ 56. |
|---|---|---|
| 45 | SUEZ engaged Lucasys in August 2019 to provide consulting services with respect to its licensed PowerPlan software. Ex. 20, LucasysRPD0034300. | Doc. 193-2 ¶ 58. |
| 46 | SUEZ, an investor-owned utility company, became a Lucasys customer in August 2019. (Declaration of Daniel Chang ("Chang Dec."), attached hereto as Exhibit K, ¶ 5; Ex. D, Lantukh Dec. ¶ 62.) | Doc. 193-3 ¶ 66. |
| 47 | Between August and November 2019, SUEZ and Lucasys executed five statements of work generating significant revenue for Lucasys. Exs. 20–24, LucasysRPD0034300, LucasysRPD0012700, LucasysRPD0035587, LucasysRPD0002481, LucasysRPD0002355. | Doc. 193-2 ¶ 59. |
| 48 | During its engagement, Lucasys provided a variety of consulting services for SUEZ resulting from these assessments, including calculating and maintaining its tax depreciation and | Doc. 193-3 ¶ 68. |

| | | |
|---|---|---|
| | deferred tax balances, establishing a tax basis balance sheet, and data cleansing and process improvements for both the tax department and plant accounting department. (Ex. K, Chang Dec. ¶ 7; Ex. D, Lantukh Dec. ¶ 64.) | |
| 49 | In October 2019, Lucasys and NextEra entered an agreement for Lucasys to provide tax consulting services related to "PowerTax tax depreciation and deferred tax modules for Trans Bay assets." Doc. 175, 30(b)(6) Deposition of NextEra ("NextEra Tr.") 14:15–15:24; Ex. 34, NextEra Dep. Ex. 278 at NEE - 014. Lucasys was to complete the project by December 15, 2019. Ex. 34, NextEra Dep. Ex. 278 at NEE - 028. | Doc. 193-2 ¶ 80. |
| 50 | ███████████████████████████████ ███████████████████████████████ ███████████████████████████ ██████████████████████ | Doc. 192-2 ¶ 39. |
| 51 | On October 28, 2019, PowerPlan's Chief Customer Officer Brett Bertz emailed FPL requesting a time to discuss "PowerPlan's intellectual property and trade secrets" and | Doc. 193-3 ¶ 35. |

| | | |
|---|---|---|
| | Lucasys. (Doc. 154-1, Dec. 2, 2021 Deposition of Brett Bertz ("Bertz Dep.") at 175:10–20; *Id.* at 359 (Pl.'s Ex. 25).) | |
| 52 | The next day, on October 29, 2019, Mr. Bertz spoke with FPL representatives on the phone and indicated that Lucasys was involved with a "potential IP infringement issue." (Doc. 154-1, Bertz Dep. at 360, 365 (Pl.'s Exs.26, 30).) | Doc. 193-3 ¶ 36. |
| 53 | In late October 2019, PowerPlan contacted FPL and communicated that PowerPlan would not consent to Lucasys having access to PowerPlan software or databases. (Doc. 154-1, Bertz Dep. at 304 (Pl.'s Ex. 20).) | Doc. 192-2 ¶ 42. |
| 54 | NextEra terminated its agreement for tax consulting services with Lucasys. | Doc. 193-2 ¶ 82. |
| 55 | PowerPlan agreed to perform the remaining work for the amount NextEra stated it would have paid Lucasys to perform this work, ███████████████ Doc. 154, Deposition of Brett Bertz ("Bertz Tr.") 183:1–184:6, 185:15–186:13. | Doc. 193-2 ¶ 83. |
| 56 | On November 7, 2019, Mr. Bertz contacted James Llende of AEP to express "concern [that] Lucasys was accessing code that they shouldn't have accessed." (Doc. 168-1, Aug. 15, 2022 | Doc. 193-3 ¶ 40. |

| | Deposition of James X. Llende 30(b)(6) Witness for American Electric Power ("AEP Dep.") at 65:8–12.) | |
|---|---|---|
| 57 | PowerPlan Vice President Jim Dahlby participated in the phone call. (Doc. 164-1, Dahlby Dep. at 59:6–14.) | Doc. 193-3 ¶ 41. |
| 58 | AEP consulted with its in-house counsel and decided to continue to use Lucasys for Tax Services. | Doc. 193-2 ¶ 50. |
| 59 | ███████████████████████████████ ████████████████████ | Doc. 193-2 ¶ 51. |
| 60 | AEP has provided Lucasys access to its data and PowerPlan's software as part of that engagement. Doc. 168, AEP Tr. 10:18–24. | Doc. 193-2 ¶ 52. |
| 61 | AEP testified that it is "always looking to see what's out there in the marketplace" for tax software and would consider in the future switching to "whoever brings [AEP] a solution that [AEP] think[s] would work," whether that is "Lucasys," "Oracle," or "PwC." ██████████████████ ████████████████████████ ████████████████████ | Doc. 193-2 ¶ 54. |

| 62 | On December 4, 2019, Lucasys and PowerPlan entered into an Agreed Process for Information Exchange and Dispute Resolution ("Agreed Process"). | Doc. 193-3 ¶ 49. |
|---|---|---|
| 63 | Through the Agreed Process, Lucasys made available for inspection by PowerPlan its software, including its modules, suites, applications, and solutions. Lucasys further provided a list and summary of existing and contemplated software modules and applications, as well as the development stages for each such solution. | Doc. 193-3 ¶ 50. |
| 64 | Lucasys also provided an in-person demonstration of each such module, application, and tool associated with the above software. (*Id.* ¶ 51.) | Doc. 193-3 ¶ 51. |
| 65 | PowerPlan's Vice President Jim Dahlby, Senior Corporate Counsel Jonathan Sucher, and outside counsel at Nelson Mullins Riley & Scarborough (Mark VanderBroek, Lloyd Farr, and Peter Munk), and its third-party software experts Sylvan Advisory & Consulting, LLC (Paul Pinto, Lou Brink, and Scott Robinson) were provided copies of and permitted to inspect the aforementioned software solutions. (*Id.* ¶ 52.) | Doc. 193-3 ¶ 52. |

| 66 | In December 2019, Laura Naclerio (now Laura Eustace) of Liberty Utilities reached out to Lucasys to secure Tax Services related to the implementation of PowerTax. (Doc. 161-1, Chang Dep. at 123:2–124:18; Doc. 166-1, Eustace Dep. at 10:23–11:24; Doc. 166-1 at 52 (Ex. 1).) | Doc. 192-2 ¶ 44. |
| 67 | On February 20, 2020, Liberty Utilities contracted with Lucasys to provide Tax Services. (Doc. 161-1, Chang Dep. at 128:5–1; Doc. 161-1 at 345 (Def.'s Ex. 31); Doc. 166-1, Eustace Dep. at 66 (Ex. 6).) | Doc. 192-2 ¶ 45. |
| 68 | ███████████████████████████████ ████████████████████████████████ █████████████████████████████████ ██████████████████████████████ ██ | Doc. 192-2 ¶ 46. |
| 69 | Liberty had decided to use PowerPlan's tax software and, through its parent company, entered an agreement with PowerPlan in March 2020 to license 12 software modules, including PowerTax. Ex. 30, POWERPLAN01468994. IBM recommended that Liberty use PowerPlan software. Doc. 165, | Doc. 193-2 ¶ 70. |

| | 30(b)(6) Deposition of Liberty (Luisa Read) ("Liberty (Read) Tr.") 41:25–42:24. | |
|---|---|---|
| 70 | ████████████████████████████████ ██████████████████████████████ ████████████████████████████ ███████████████████████████ ████████████████████████████████ ██████████████████████████████ ████████████████████████ ██████████████████████████████████ ████████████████████████████████ ██████████████████████████ ██████████████ | Doc. 193-2 ¶ 60. |
| 71 | On April 17, 2020, PowerPlan terminated the Agreed Process. (*Id.* ¶ 56.) | Doc. 193-3 ¶ 56. |
| 72 | As part of that work, a SUEZ employee sent a request to PowerPlan for a copy of code for modules that are part of PowerPlan's Fixed Asset suite. Doc. 176, SUEZ Tr. 17:15–23; 20:22–25. | Doc. 193-2 ¶ 61. |

| 73 | PowerPlan became aware of Lucasys' engagement with Liberty and contacted Liberty regarding PowerPlan's confidential information. | Doc. 193-2 ¶ 72. |
|----|----|----|
| 74 | Specifically, on April 20, 2020, PowerPlan's then Strategic Accounts Executive, Jim Duffy, emailed Luisa Read at Liberty to set up a call. (*Id.* at 577 (Pl.'s Ex. 125).) | Doc. 193-3 ¶ 58. |
| 75 | That day, Mr. Duffy had multiple calls with Ms. Read. (*Id.* at 578 (Pl.'s Ex. 126).) | Doc. 193-3 ¶ 59. |
| 76 | On April 21, 2020, PowerPlan contacted Liberty Utilities and communicated that PowerPlan would not consent to Lucasys having access to PowerPlan software or databases. (Doc. 165-1, Read Dep. at 24:12–25:16; Doc. 166-1, Eustace Dep. at 66 (Ex. 6); Doc. 159-1, Duffy Dep. at 186:4–19; Doc. 159-1 at 579 (Pl.'s Ex. 127).) | Doc. 192-2 ¶ 47. |
| 77 | PowerPlan withheld its consent for Lucasys to access Liberty's PowerPlan software system or database. | Doc. 193-2 ¶ 73. |
| 78 | Two days later, on April 23, 2020, Liberty terminated its contract with Lucasys for Tax Services. (Doc. 165-1, Read Dep. at 25:1–8; Ex. D, Lantukh Dec. ¶ 61.) | Doc. 193-3 ¶ 61. |

| 79 | That day, Ms. Read from Liberty contacted Lucasys' CEO Vadim Lantukh and COO Daniel Chang regarding the termination. (Ex. D, Lantukh Dec. ¶ 61.) | Doc. 193-3 ¶ 62. |
|----|----|----|
| 80 | Following those communications, Liberty hired a third-party (not PowerPlan or Lucasys) as an employee to assist with the PowerPlan software implementation, and Liberty is satisfied with the work that was done. Doc. 165, Liberty Tr. (Read) 36:17–37:2, 37:22–38:3. | Doc. 193-2 ¶ 74. |
| 81 | Liberty has been satisfied with the functionality of PowerPlan's software, and with PowerPlan's services consultants and the advice they provided. Doc. 165, Liberty (Read) Tr. 38:14–18, 39:9–40:10. | Doc. 193-2 ¶ 77. |
| 82 | SUEZ had a phone call with PowerPlan during which PowerPlan stated it generally does not allow access to its code to customers. | Doc. 193-2 ¶ 62. |
| 83 | In May 2020, PowerPlan sent a letter to SUEZ expressing its concerns about Lucasys accessing PowerPlan's confidential information and reminding SUEZ of its confidentiality | Doc. 193-2 ¶ 63. |

| | obligations under the License Agreement. Ex. 26, POWERPLAN00119994. | |
|---|---|---|
| 84 | On May 21, 2020, PowerPlan's Chief Customer Officer Brett Bertz sent a letter to SUEZ Water Management and Services Inc. ("SUEZ") (now Veolia Water M&S (Paramus) Inc.) regarding its engagement with Lucasys. (Doc. 154-1, Bertz Dep. at 372 (Pl.'s Ex. 34).) | Doc. 193-3 ¶ 65. |
| 85 | On June 1, 2020, Mr. Chang had a call with SUEZ's Controller and Chief Accounting Officer Mohammed "Rally" Zerhouni regarding PowerPlan's communication. (Ex. K, Chang Dec. ¶ 10.) | Doc. 193-3 ¶ 73 |
| 86 | In June 2020, SUEZ responded, requesting that PowerPlan identify the types of confidential information that PowerPlan believed SUEZ may have provided to Lucasys. Ex. 46, POWERPLAN00000870. PowerPlan then identified the types of information in a response letter. Ex. 47, POWERPLAN00000004. In July 2020, SUEZ replied that it had not provided Lucasys access to any confidential information. Ex. 27, POWERPLAN00000751. | Doc. 193-2 ¶ 64. |

| 87 | Despite the letters, SUEZ notified PowerPlan that SUEZ intended to continue working with Lucasys, and SUEZ signed a new Statement of Work with Lucasys in June 2020, with revised language that Lucasys agreed that its access to SUEZ's PowerPlan and PeopleSoft systems would be used solely to provide the requested services to SUEZ. Ex. 27, POWERPLAN00000751, Ex. 28, LucasysRPD0002405; Ex. 29, VEOLIA000124; Doc. 176, SUEZ Tr. 49:9–24, 50:22–51:7. | Doc. 193-2 ¶ 65. |
|----|------|------|
| 88 | SUEZ allowed Lucasys to finish the current project it was working on and a minor mission-critical project. | Doc. 193-3 ¶ 78 |
| 89 | Lucasys was able to complete its work without having access to PowerPlan's code that had been requested by SUEZ. Doc. 176, SUEZ Tr. 21:22–24. | Doc. 193-2 ¶ 66. |
| 90 | SUEZ's 30(b)(6) representative testified that he did not recall any oral accusations by PowerPlan that Lucasys had in fact already misappropriated confidential information and trade secrets. | Doc. 193-2 ¶ 68. |
| 91 | In May and June 2020, PowerPlan sent letters to approximately 65 customers indicating that it did not consent to Lucasys | Doc. 193-2 ¶ 85. |

| | | |
|---|---|---|
| | accessing PowerPlan's software or other confidential or trade secret information, consistent with the terms of the software license and subscription agreements. *See*, Ex. 1, Bertz Dep. Ex. 17; Ex. 37, POWERPLAN00000955. | |
| 92 | Between May 28, 2020 and July 17, 2020, PowerPlan contacted customers with what it internally called an "IP Protection" campaign. | Doc. 193-3 ¶ 79 |
| 93 | Initially, Mr. Bertz emailed more than 50 RRIOUs. (*Id.* at 85:4–86:5, 87:18–25, 88:25–89:13.) | Doc. 193-3 ¶ 80. |
| 94 | PowerPlan named Lucasys in its correspondence because at the time "Lucasys was the only company that we [PowerPlan] were aware of that was engaging with our customers and delivering services on top of the PowerPlan technology, which would give them potential access to our confidential information, and was marketing themselves as developing or offering competitive products." Doc. 154, Bertz Tr. 94:24–95:7. | Doc. 193-2 ¶ 86. |
| 95 | The letters state:<br><br>Lucasys offers consulting services associated with PowerPlan software and software solutions that compete with PowerPlan software.  To protect our intellectual property, including trade secrets, we cannot permit our customers to provide Lucasys | Doc. 193-2 ¶ 87. |

| | | |
|---|---|---|
| | with access to our proprietary software and associated confidential information while Lucasys is simultaneously developing, marketing, and selling competitive software to those same customers.  This would create an intolerable risk that Lucasys will misuse and misappropriate our confidential information and unfairly use it to develop, market, and sell its competing software.<br><br>Ex. 1, Bertz Dep. Ex. 17. | |
| 96 | Those emails stated that, by contract, Lucasys could not access PowerPlan's "proprietary software and associated confidential information." (*Id.* at 280–300 (Pl.'s Exs. 14–17).) | Doc. 193-3<br><br>¶ 81. |
| 97 | To date, PowerPlan has not made any communications to those RRIOUs notifying them of a change in that position since the filing of this lawsuit. (PowerPlan, Inc.'s Responses to Lucasys, Inc.'s Third Set of Continuing Interrogatories, Response Number 21, attached hereto as Exhibit II.) | Doc. 192-2<br><br>¶ 50. |
| 98 | Mr. Bertz also separately emailed Rob Kleczynski, an executive at Exelon Corporation, an RRIOU that sells electricity. (*See* July 17, 2017 Email from B. Bertz to R. Kleczynski, attached as Exhibit L to Response Brief.). | Doc. 193-3<br><br>¶ 82. |
| 99 | Mr. Kleczynski was the Senior Vice President and General Tax Officer of Exelon Corporation, the largest RRIOU in the United | Doc. 193-3<br><br>¶ 83. |

| | | |
|---|---|---|
| | States, and the chair of the Edison Electric Institute ("EEI"), a close-knit group of industry leaders from RRIOUs across the United States. (Ex. D, Lantukh Dec. ¶¶ 76–80.) | |
| 100 | After this lawsuit was filed, PowerPlan's outside litigation attorneys requested certain information from Lucasys' attorneys and that Lucasys' attorneys refused to provide it. | Doc. 193-2 ¶ 90. |
| 101 | In April 2022, PowerPlan submitted to Lucasys' outside counsel a 53 page and 411 paragraph identification of trade secrets, which was protected under the protective order in this case. Ex. 7, Dahlby Decl. ¶ 7. | Doc. 193-2 ¶ 95. |
| 102 | The Court dismissed PowerPlan's counterclaims without prejudice on May 10, 2022. | Doc. 193-2 ¶ 91. |
| 103 | Lucasys then provided the information that PowerPlan's litigation attorneys had previously requested, and PowerPlan did not refile the counterclaims. Doc. 169, Gomes Tr. 289:25–290:9. | Doc. 193-2 ¶ 92. |
| 104 | Lucasys' expert witness, Dr. Christine Meyer, has opined that PowerPlan has market power in the market for Tax Software. (Expert Report of Christine S. Meyer, Ph.D. ("Meyer Report"), | Doc. 192-2 ¶ 20. |

| | attached hereto as Exhibit T, ¶ 8 ("PowerPlan's high market share combined with high barriers to entry in the market for Tax Software indicate that PowerPlan has market power in the market for Tax Software."); *id.* § V.) | |
|---|---|---|
| 105 | PowerPlan's expert witness, Dr. Cleve Tyler, does not dispute that PowerPlan has market power in the market for Tax Software. (Doc. 172-1, Mar. 23, 2023 Deposition of Cleve B. Tyler, Ph.D. ("Tyler Dep."), excerpts attached hereto as Exhibit U, at 206:14-207:4.) | Doc. 192-2 ¶ 21. |
| 106 | The Second Amended Complaint admits that PowerPlan does <u>not</u> have monopoly power in the Tax Services market (Doc. 150 ¶ 18), and Lucasys' expert does not claim that PowerPlan or any other services provider has market power in the Tax Services market (Doc. 177, Deposition of Christine Meyer ("Meyer Tr.") 54:2–10). | Doc. 193-2 ¶ 20. |
| 107 | PowerPlan's ordinary course business documents call its software the "stickiest and most differentiated product solution, with currently 81% penetration for the PowerTax module | Doc. 192-2 ¶ 24. |

| | | |
|---|---|---|
| | within [its] core IOU market." (Ex. E, 2021 – 2023 Strategic Plan at 6–7). | |
| 108 | According to a May 2017 PowerPlan internal email concerning communications to RRIOU tax departments: "Managing complex deferred tax calculations is the 'special sauce' of PowerPlan's tax solutions, PowerTax and Provision, and is one of the reasons 99% of investor owned utilities utilize the PowerTax system." (Doc. 155-1 at 296 (Pl.'s Ex. 53).) | Doc. 192-2 ¶ 25. |
| 109 | According to a 2018 PowerPlan proposal for PowerTax Deferred Tax implementation for National Grid, "[t]he client base that has adopted the PowerTax Depreciation and PowerTax Deferred Tax Accounting module includes nearly 100% of the investor owned utilities in the United States." (Ex. X, Carr, Jamie, *National Grid PowerTax Deferred Tax Implementation* (Apr. 16, 2018).) | Doc. 192-2 ¶ 26. |
| 110 | Tax depreciation and deferred tax software takes significant capital investment to develop. | Doc. 192-2 ¶ 30. |
| 111 | Tax depreciation and deferred tax software is best developed by persons with specialized knowledge. | Doc. 192-2 ¶ 31. |

| 112 | It is expensive for an RRIOU to switch from one Tax Software product to another. (Email from Nathan Shurtleff to Skip Fowler (Feb. 14, 2019) (POWERPLAN01695482), attached hereto as Exhibit FF; Doc. 160-1, Lantukh Dep. at 185:15–187:23.) | Doc. 192-2 ¶ 32. |
| --- | --- | --- |
| 113 | PowerPlan hired an outside consultant named Stax, LLC ("Stax") to do market research into customer views of PowerPlan's software products. (Doc. 188-1, June 15, 2022 Deposition of Paul David Edwards 30(b)(6) Witness for Stax, LLC ("Stax Dep.").) | Doc. 193-3 ¶ 93. |
| 114 | PowerPlan has a Data Hub tool that facilitates getting customer data out of various PowerPlan software products and making it available for other uses desired by the customer. Doc. 159, Duffy Tr. 316:7–317:8. | Doc. 193-2 ¶ 17. |
| 115 | PowerPlan has entered into AVAs with Regulated Capital Consultants relating to two separate PowerPlan customers. Exs. 40–41, POWERPLAN01654654 & POWERPLAN01937563. | Doc. 193-2 ¶ 26. |

Respectfully submitted this 30th day of June, 2023

**AGREED BY:**

| | |
|---|---|
| *s/ Joshua Mayes (per email consent)* | *s/ Damond Mace* |
| Richard L. Robbins | Petrina A. McDaniel |
| Georgia Bar No. 608030 | Georgia Bar No. 141301 |
| rrobbins@robbinsfirm.com | Petrina.mcdaniel@squirepb.com |
| Jason Alloy | **SQUIRE PATTON BOGGS (US) LLP** |
| Georgia Bar No. 013188 | 1230 Peachtree Street NE, Suite 1700 |
| jalloy@robbinsfirm.com | Atlanta, Georgia 30309 |
| Joshua A. Mayes | Telephone:  +1.678.272.3200 |
| Georgia Bar No. 143107 | Facsimile:   +1.678.272.3211 |
| jmayes@robbinsfirm.com | |
| Rachel F. Gage | Damond R. Mace (admitted *pro hac vice*) |
| Georgia Bar No. 547982 | Damond.mace@squirepb.com |
| rgage@robbinsfirm.com | Stephen M. Fazio (admitted *pro hac vice*) |
| Evan C. Dunn | Stephen.fazio@squirepb.com |
| Georgia Bar No. 535202 | Steven A. Friedman (admitted *pro hac vice*) |
| edunn@robbinsfirm.com | Steven.friedman@squirepb.com |
| **ROBBINS ALLOY BELINFANTE** | Janine C. Little (admitted *pro hac vice*) |
| **LITTLEFIELD LLC** | Janine.little@squirepb.com |
| 500 14th Street, NW | **SQUIRE PATTON BOGGS (US) LLP** |
| Atlanta, Georgia 30318 | 4900 Key Tower |
| Telephone:  +1.678.701.9381 | 127 Public Square |
| Facsimile:   +1.404.856.3250 | Cleveland, Ohio  44114-1304 |
| | Telephone:  +1.216.479.8500 |
| Aaron Gott (*pro hac vice*) | Facsimile:   +1.216.479.8780 |
| Aaron.gott@bonalawpc.com | |
| **BONA LAW PC** | *Attorneys for Defendant PowerPlan, Inc.* |
| 15 South 9th Street, Suite 239 | |
| Minneapolis, Minnesota 55402 | |
| Telephone:  +1.612.284.5001 | |
| | |
| Jarod Bona (*pro hac vice*) | |
| Jarod.bona@bonalawpc.com | |
| Jon Cieslak (*pro hac vice*) | |
| Jon.cieslak@bonalawpc.com | |
| **BONA LAW PC** | |

4275 Executive Square, Suite 200
La Jolla, California 92037
Telephone:  +1.858.964.4589
Facsimile: +1.858.964.2301

*Attorneys for Plaintiff Lucasys Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in Times New Roman, 14-point font.

*/s/ Damond Mace*
Damond Mace

*Attorney for Defendant PowerPlan, Inc.*