IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LUCASYS INC., | : : : : | |
| Plaintiff, | : : | |
| v. | : : : | CIVIL ACTION NO. 1:20-cv-2987-AT |
| POWERPLAN, INC., | : : : | |
| Defendant. | : | |

## **ORDER**

This case is scheduled for oral argument on May 7, 2024 on the cross motions for summary judgment. This Order provides direction for that oral argument. First, the Court **RESETS** the May 7 oral argument to begin at **1:30 p.m**. instead of 2:00 p.m. Counsel should be prepared for the hearing to last until 5:30 p.m., if necessary.

At the hearing, the Court will hear argument from counsel claim by claim (with some claims grouped together as indicated below), and then will allow each side ten minutes for closing arguments. As to each claim, each side will have approximately the same time to argue, with Plaintiff arguing first and Defendant arguing second. The Court will then determine if any follow-up rebuttals or additional questions are necessary. The time amounts provided are just estimates. If the Court finds the discussion helpful, it may extend the estimated time periods

or allow the discussion to run longer. As to each claim (or set of claims), the Court has provided below direction about: (1) topics the parties should be sure to address and (2) questions that the parties should be sure to answer during the course of their argument.

| Topic Order | Topic | Minutes per side | Parties to focus on | Specific questions from the Court |
|---|---|---|---|---|
| 1 | Count I: Monopolization – Negative Tying (Section 2) | 5 | Proper analytical framework | (1) Is the relevant market for purposes of the monopolization claims the Tax Software Market?<br><br>(2) Defendant asserts that Count I is evaluated under the rule of reason outlined in *NCAA v. Alston*, 594 U.S. 69, 96 (2021), and *Ohio v. Amex*, 585 U.S. 529, 541 (2018)). Those cases, however, involve claims brought under Section 1 of the Sherman Act. Other authority indicates that Section 2 claims are analyzed under a different (but related) test. *See Spanish Broadcasting Sys. Of Fla. v. Clear Channel Comm.*, 376 F.3d 1065, 1074 (11th Cir. 2004). What are the parties' positions as to which analytical framework governs the Section 2 claims? |
| 2 | Count II: Monopolization - Refusal to Supply (Section 2) | 10 | Overall theory and whether a threatened refusal to supply is sufficient | (3) Does Plaintiff contend that customers cannot access their data outside of the PowerTax software? (And therefore that a refusal to supply a customer with PowerTax is *de facto* a refusal to supply the customer with its own data?). If so, what |

|   |   |   |   | record evidence supports this factual assertion.<br><br>(4) Does Plaintiff rely on any authority more recent than the cited Supreme Court cases in 1947 and 1951 for the proposition that a refusal to supply claim can be based on a *threat* not to supply versus an actual withdrawal of supply? Conversely, does Defendant have any authority saying that a threat of refusal to supply is insufficient? |
|---|---|---|---|---|
| 3 | Count III: Negative Tying (Section 1) | 10 | Whether there has been a negative tie (element 2 of a *per se* violation) | (5) On the second element of a *per se* violation — whether the products have been (negatively) tied — is this determination a question of law or question of fact? How should the Court think about evaluating this element?<br><br>(6) If the Court determines that this is not a *per se* violation and thus should be evaluated under the rule of reason (and Lucasys therefore has to show harm to competition), is Lucasys required to show harm to competition in the Tax Services Market? Or is harm to competition in the Tax Software Market sufficient?<br><br>(7) On the same note — and as related also to Counts IV and V — what evidence does Lucasys rely on to show harm <u>to competition</u> in the Tax Services Market (as opposed to Tax Software Market)?<br><br>(8) Relatedly, what <u>specific evidence</u> does PowerPlan rely |

| | | | | |
|---|---|---|---|---|
| | | | | on to support its procompetitive justification?<br><br>(9) Under the burden shifting framework (outlined in *NCAA v. Alston*, 594 U.S. 69, 96 (2021), and *Ohio v. Amex*, 585 U.S. 529, 541 (2018)), who ultimately determines whether any alleged procompetitive rationale could be achieved through less anticompetitive means?  The Court or a jury? Can Lucasys confirm that it seeks a jury trial on all claims? |
| 4 | Count IV: Concerted Refusal to Deal (Section 1) | 5 | Requirement of common design | (10) What evidence does Lucasys rely on to show that PowerPlan and customers (e.g., FPL) had a "unity of purpose" or "common design" not to deal with Lucasys? *See DeLong Equip. Co. v. Washington Mills Abrasive Co.*, 887 F.2d 1499, 1515 (11th Cir. 1989) (requiring a plaintiff to establish, at minimum, that conspirators had a "unity of purpose of a common design and understanding, or a meeting of minds in an unlawful agreement.") Specifically, what evidence supports a common design as opposed to customers simply being allegedly coerced by PowerPlan?<br><br>(11) If evaluated under the rule of reason, what is the relevant market in which Lucasys must show harm to competition? What evidence does Lucasys rely on for harm to competition in the Tax Services Market for this claim? |

| 5 | Count V: Exclusive Dealing (Section 1) | 10 | Harm to competition in the Tax Services Market | (12) What is the relevant market in which Lucasys must show harm to competition? What evidence does Lucasys rely on for harm to competition in the Tax Services Market for this claim?<br><br>(13) If Lucasys claims that both markets are the "relevant markets," what authority supports that the Court can assess anticompetitive effects in *two* relevant markets?<br><br>(14) As related to this claim, and others, what <u>specific</u> trade secrets does PowerPlan assert are protected by the relevant provisions of the customer contracts? Relatedly, which of these trade secrets could be acquired by someone with end-user access? Please provide examples. |
| 6 | Count XI: Monopolization – Sham Trade Secret Assertion (Section 2) | 10 | *Noerr-Pennington* immunity and specifically the first prong of the test | (15) On the question of whether PowerPlan's counterclaims were objectively reasonable – is this a question of fact or law? Would a jury decide objective reasonableness? Or is this for the Court?<br><br>(16) Relatedly, are there any predicate facts in dispute as to whether PowerPlan had probable cause to support the filing of the counterclaims? If so, what are those facts? If not, shouldn't the Court decide objective reasonableness as a matter of law? |
| 7 | Count XII: Monopolization – Sham Trade Secret | 5 | Overall theory of claim; harm | (17) It appears undisputed that the only Authorized Vendor Agreements that were executed are between PowerPlan and |

|   | | | | |
|---|---|---|---|---|
|   | Licensing – re Authorized Vendor Agreements (Section 2) | | to competition | another tax service provider (RCC) related to two customers. If this is accurate, how have the AVAs harmed competition in the Tax Software Market — where Lucasys has not been bound by such agreements? |
| 8 | Count VII and VIII: Tortious Interference with Contract and Malicious Interference with Business | 5 | Duplicativeness of claims | (18) What distinguishes these two claims? If Plaintiff cannot recover for the same injury twice, why are both claims necessary? Would it be better, for purposes of a jury trial, for Plaintiff to voluntarily dismiss the "malicious interference with business" claim for clarity and efficiency? |
| 9 | Count IX and X: Defamation and Defamation Per Se | 5 | | (19) For its defamation claims, is the only written statement that Lucasys relies on the email from Mr. Bertz to Mr. Kleczynski? PowerPlan points out that the email does not explicitly mention Lucasys and therefore cannot support a defamation claim. How does Lucasys respond to this point?<br><br>(20) As to defamation claims regarding oral statements discussed in Mr. Lantukh's or Chang's declarations, does Plaintiff believe any hearsay exception would apply to render these statements admissible? |
| 10 | Closing Arguments | 10 | | |

**IT IS SO ORDERED** this 9th day of April 2024.

_____
**Honorable Amy Totenberg**
**United States District Judge**